# EXHIBIT  5

-----Original Message-----

**From:**  Turner, Racheal (21) x4988

**Sent:**  Tuesday, April 12, 2005 5:20 PM

**To:**    'matt.dillard@worldspan.com'; 'Zegura, Dan'; 'thomas.demay@galileo.com'; 'dwentzel@mwe.com'; 'dcoburn@steptoe.com'; 'cindy.buhr@wnco.com'; 'Donna.Katos@coair.com'; 'john.midgett@united.com'; 'donald.broadfield@aa.com'; 'Minerva@usairways.com'; 'rsilverberg@sgbdc.com'; 'Carla.weiler@alaskaair.com'; 'doug.allsworth@kutakrock.com'; 'scott.mcclain@delta-air.com'; 'Bruce.Wark@AA.com'; 'joanna.geraghty@jetblue.com'

**Subject:**    Resolution Mooting Sabre's Motion to Stay Discovery

To Third Parties Subpoenaed by Northwest:

Today Sabre withdrew its pending motion to temporarily stay discovery of Northwest's antitrust claim on the basis of the attached resolution of Sabre's objections to Northwest's first set of production requests.  Please note that Northwest has represented to Sabre that "it will offer to apply the same narrowed scope of document requests set forth herein to the pending third-party subpoenas."  See Resolution at 1, general objection #6.

<<04-12-05 Sabre_s Notice That Sabre_s Motion for Temporary Stay of Discovery has been Rendered Moot.PDF>> <<04-12-05 (Signed Final Copy) Resolution of Sabre_s Disputed Objections.PDF>>

Thank you,

**Racheal Turner**
Attorney At Law

———————————————

**Farella Braun + Martel LLP**

8/17/2005

FW: Resolution Mooting Sabre's Motion to Stay Discovery
Case 1:05-mc-00166-SLR    Document 2-3    Filed 08/23/2005    Page 3 of 51
Page 2 of 2

RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

T 415.954.4400
D 415.954.4988
F 415.954.4480
www.fbm.com

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact
the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SABRE INC. and SABRE TRAVEL INTERNATIONAL LIMITED, | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:04-CV-612-Y (ECF) |
| vs. | § § | |
| NORTHWEST AIRLINES, INC. | § § | Consolidated with 4:04-CV-907-Y |
| Defendant. | § § | |

## NOTICE THAT SABRE'S MOTION FOR TEMPORARY STAY OF DISCOVERY HAS BEEN RENDERED MOOT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs and Defendants in these consolidated actions, Sabre Inc., Sabre Travel International Limited, and Sabre Holdings Corporation (collectively, "Sabre"), hereby notify the Court that Sabre's Motion For Temporary Stay Of Discovery Related To Northwest's Antitrust Claims, filed March 14, 2005, (Docket # 96), has been rendered MOOT. The parties have conferred and resolved the discovery disputes set forth in that Motion.

DATED: April 12, 2005

By:    /s/ Roderick M Thompson

R.H. Wallace, Jr.
Texas State Bar No. 20778700
**SHANNON GRACEY RATLIFF & MILLER LLP**
777 Main Street, Suite 3800
Fort Worth, TX 76102
Telephone: (817) 336-9333

*(Additional Counsel on following page)*

Roderick M. Thompson
Cal. Bar No. 096192 (*Pro hac vice*)
Neil A. Goteiner
Cal. Bar No. 083524 (*Pro hac vice*)
Jessica K. Nall
Cal. Bar No. 215149 (*Pro hac vice*)
Frank Riebli
Cal. Bar No. 221152 (*Pro hac vice*)
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 30th Flr.
San Francisco, CA 94104
Telephone: (415) 954-4400

Fred H. Bartlit
IL State Bar No. 127280
Chris Lind
IL State Bar No. 6225464 (*Pro hac vice*)
**BARTLIT, BECK, HERMAN,
PALENCHAR & SCOTT LLP**
Courthouse Place, 54 West Hubbard Street
Chicago, IL  60610
Telephone: (312) 494-4400

**Attorneys for SABRE INC., SABRE
TRAVEL INTERNATIONAL
LIMITED, and SABRE HOLDINGS
CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2005 I electronically filed Sabre's Notice That Sabre's Motion to Compel Production of Documents Is Moot with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

      Barry C Barnett
      Theresa M Bevilacqua
      Parker C Folse, III
      Neil A Goteiner
      Chris Lind
      Ryan Laurence Nelson
      Eric R Olson
      Laura Cullen Roche
      Thomas Tinkham
      R H Wallace, Jr.

                  /s/  Roderick M Thompson

## RESOLUTION OF SABRE'S DISPUTED OBJECTIONS
## TO NORTHWEST'S FIRST SET OF PRODUCTION REQUESTS

### General Objections

**#2:**    The parties agree that there may be events or documents post-dating the September 27, 2004 filing of Northwest's First Amended Complaint that may be relevant to the litigation. Both parties may notify the other of any specific document requests for which it is believed that documents created, dated, or received after that date are relevant.

**#3:**    The parties agree that notwithstanding Sabre's objection to the definition of "Sabre," it will produce documents within the possession, custody, or control of Sabre Inc., Sabre Travel International Limited, and Sabre Holdings, as required by FRCP 34(a). Northwest will likewise produce documents within its possession, custody, or control notwithstanding its objection to the definition of "Northwest" that appeared in Sabre's requests for production.

**#4:**    Sabre confirms that this objection will not restrict Sabre's search for documents, and that otherwise responsive documents will not be withheld from production on the basis of this objection.

**#5:**    Sabre confirms that this objection will not restrict Sabre's search for documents, and that otherwise responsive documents will not be withheld from production on the basis of this objection.

**#6:**    Sabre will withdraw this objection and the pending motion to stay when the parties have signed this agreement, based in part on the representation by Northwest that it will offer to apply the same narrowed scope of document requests set forth herein to the pending third-party subpoenas.

**#7:**    This objection is moot, in light of the Court's entry of a protective order. All restatements of this objection in Sabre's responses to specific requests for production are likewise moot, and no documents will be withheld from production on the basis of this objection.

Scope of Document search by Sabre: Several of Northwest's requests, even after narrowing, seek "all documents" about subjects that potentially involve thousands of Sabre employees (e.g., Sabre's relationships with airlines and travel agents, its competitors and technologies that may compete with the Sabre GDS, booking fee revenues and associated costs.) Assuming that agreement is reached on a narrowed scope for these requests, Sabre will search for and produce responsive documents from those locations believed most likely to contain documents addressed to these subjects. Sabre agrees that Northwest may follow the same approach in producing documents requested by Sabre.

## Objections to Specific Document Requests

#3:    Sabre agrees that no documents will be withheld on the basis of Sabre's objection that the request seeks information that is publicly available and equally accessible to Northwest.

#6:    To resolve Sabre's vagueness objection (without agreeing that it was a valid one), Northwest agrees to re-word the request as follows, and Sabre agrees that the revised request resolves its vagueness objection:

> "All documents that discuss, analyze, or reflect Sabre's consideration of scenarios or options that Sabre might pursue in response to Northwest's Shared GDS Fee Initiative, or the possible results or effects that such scenarios or options might produce if Sabre were to pursue them."

#7:    Sabre agrees to withdraw its vagueness objection to the terms "possible actions" (understood to mean "possible business actions") and "other persons" as those phrases are used in this request.

#8:    Sabre agrees that no documents will be withheld on the basis of its objection that the request assumes facts not in evidence and is argumentative.

#9:    Sabre agrees to withdraw its vagueness objection to the phrase "any other person" as used in this request. Sabre also agrees that no documents will be withheld on the basis of its objection that the request assumes facts not in evidence and is argumentative. As in No. 6, the preamble will be revised to seek "documents that discuss, analyze, or reflect . . ."

#11:    Northwest clarifies that the phrase "any other actions" means business actions taken by one or more of the three Sabre entities named in the lawsuit. With that clarification, Sabre agrees to withdraw its vagueness objection. As in No. 6, the preamble will be revised to seek "documents that discuss, analyze, or reflect . . ."

#15:    Sabre agrees that it will investigate the burden required for Sabre to respond to this request as worded and then discuss the issue further with Northwest.

For both Nos. 15 and 16, Sabre has directed Northwest's attention to the Affidavit of David Houck, filed in support of the motion to stay, which provides details about the burden. Counsel of Sabre and Northwest are discussing practical solutions for using the data base containing more than a million documents without imposing undue burden and expense to either party. Sabre has offered to work with Northwest to 1) compile a list of N. American Travel Agency Sabre subscribers and 2) to make available to Northwest's counsel access to the data base via a trained Sabre operator. In this way, Northwest could obtain copies of identified subscriber agreements. The access would be through a Sabre operator and would be subject to pre-agreed protocols. Sabre will produce copies of

2

blank form contracts in response to (a) of that request and produce data from which (c) and (d) can be calculated.

With regard to Nos. 15 and 16, Northwest will provide Sabre a draft Notice of 30(b)(6) Deposition intended to explore the availability of other electronically maintained data or systems at Sabre that would obviate the need for production of all the documents requested in 15 and 16.

#16:    Northwest proposes the following, which is agreeable to Sabre:

1.    That Sabre produce each subscriber agreement (including amendments and side letters) in the "Global" tier (Northwest understands that there are 13 large agencies in the Global tier) that was in effect during August and September 2004;

2.    That for each of the remaining tiers ("Premier," "Select," and "Simplicity") Sabre produce (a) form agreements reflecting the forms that were in use during 2003 and 2004; and (b) samples of the subscriber agreements (including amendments and side letters) in effect during the same time period (Northwest understands that there will be variation among the agreements in each tier, particularly in the higher tiers, where variations may be substantial);

3.    That Sabre produce any agreement(s) entered into in 2004 in which Sabre charged a transaction fee to the travel agency (rather than a booking fee to the travel supplier) [*see* Sabre Holdings Corp. 2004 Form 10-K, at p.5]

4.    That Northwest provide Sabre a draft 30(b)(6) notice designed to discover other possible sources of electronically maintained, summary information that would enable Northwest to avoid the need for all of the documents encompassed by Request 16; Sabre and Northwest can then discuss whether it would be sufficient for Sabre to provide the requested information informally.

5.    Without prejudice to seeking more in a later document request, Northwest agrees that Sabre need not produce any documents covered by Request 16 beyond those identified above.

#17:    NW clarifies that travel agents who "rely solely on Sabre for their GDS services" means travel agents who use only the Sabre GDS. With that clarification, Sabre withdraws its vagueness objection. NW further limits the request to documents that reflect studies or analysis of the extent to which travel agents use only the Sabre GDS for their GDS services, or the extent to which they use two or more GDSs.

#18:    NW agrees to limit the request to documents that discuss, or that reflect studies or analysis of, the costs that travel agents incur in using more than one GDS instead of only one. In return, Sabre withdraws its vagueness objection.

3

#19:    NW agrees to limit its request to documents consisting of summaries, studies, surveys, or analysis of the extent to which travel agents do or do not switch from one GDS provider to another over time.  In return, Sabre withdraws its vagueness objection.

#20:    NW agrees to limit the request to documents that discuss or analyze the reasons why Sabre provides "travel agent payments" generally (as opposed to reasons why specific payments may be made to specific agencies).  In return, Sabre withdraws its vagueness, overbreadth, burden, and relevance objections.

#21:    NW agrees to limit the request to documents that discuss or analyze the subjects identified in the request.  In return, Sabre withdraws its vagueness, overbreadth, burden, and relevance objections.

#23:    NW agrees to revise the request so that it reads as follows: "All documents that discuss the competition that Sabre faces in its GDS business and the companies or technologies that Sabre considers to be its actual or potential competitors in that line of business." In return, Sabre withdraws its vagueness, overbreadth, burden, and relevance objections.

#24:    NW agrees that Request No. 23, as revised, renders Request No. 24 redundant, and therefore withdraws the request.

#25:    NW revises this request so that it reads as follows:

        All documents that discuss:
        (a)    Northwest's WorldAgent Direct Web;
        (b)    Similar Electronic services offered by other airlines that allow
               travel agents to book tickets directly with the airlines without using
               a GDS; and/or
        (c)    Services that are offered, or may in the future be offered, by other
               companies that would permit travel agents to bypass GDSs to
               obtain flight and fare information and to book airline travel.

In return, Sabre withdraws its vagueness objection.

#26:    Sabre withdraws its relevance objection.  Northwest agrees to limit the request to U.S. carriers (i.e., those with a Certificate of Public Convenience and Necessity issued by the DOT) and Canadian carriers and to delete the phrase "or understandings." In return, Sabre withdraws its vagueness objection.

#27:    Sabre explained that there are about 49 N. American carriers with PCAs (some 34 U.S. and 15 Canadian), but only 6-8 have agreements similar to NW's DCA3 agreement. See Houck Affidavit.  Sabre agrees to produce these approximately 49 agreements and Northwest agrees to accept them as full compliance with this request, without prejudice to later seeking production of any "negotiation documents" regarding these agreements.

4

#28:   NW agrees to revise the request so that it reads as follows:

All documents that discuss any provision of your participation agreements that, according to Sabre's interpretation, restricts the ability of airlines who have signed such agreements to charge travel agents a fee for each ticket booked on the Sabre GDS.

In return, Sabre agrees to withdraw its vagueness, and overbreadth objections.

#29:   NW withdraws this request, while reserving the right in the future to request additional agreements beyond those requested in #26 and documents relating to the negotiation of such additional agreements.

#30:   NW agrees to revise the request so that it reads as follows:

All documents dated after January 1, 2000, that discuss

   (a)   the possibility that one or more airlines might attempt to charge travel agents all or part of the booking fees that GDSs charge the airlines; and/or

   (b)   efforts intended by airlines to reduce the volume of distribution of tickets through travel agencies that use GDSs for their booking activity.

Sabre agrees to withdraw its vagueness objection in light of this revision.

#31:   NW agrees to revise the request so that it reads as follows:

All documents that discuss, refer, or relate to Sabre's decision, following Northwest's cancellation of its Shared GDS Fee Initiative on September 2, 2004, to resume displaying Northwest's flights, fare, and seat availability in the Sabre GDS as it had prior to Northwest's announcement of that initiative.

In return, Sabre agreed to withdraw its objection that the request assumes facts not in evidence and is argumentative.

#33:   Sabre withdraws its vagueness objection.

#36:   NW agrees to revise its request so that it reads as follows:

All documents that discuss factors Sabre considers or has considered in setting its booking fees.

In return, Sabre withdraws its vagueness objection.

5

#37:    Sabre has objected to producing documents pre-dating its March 2000 spin-off from American Airlines.  However, Sabre has determined that some hard copies of financial statements pre-dating March 2000 exist.  Northwest will limit the temporal scope of this request to the period subsequent to the partial spinoff of Sabre from American in 1996.  Sabre will provide copies of such financial statements as can be located; it is not known whether the documents will be "sufficient" to show all of the data requested (e.g., on a monthly, quarterly and annual basis for each N. Am. Participating airline).

#38:    Sabre again objects to producing documents pre-dating March 2000. Investigating what documents concerning third party GDS fees may exist would be burdensome and not likely to be productive.  Sabre is willing to provide documents that exist from after March 2000.  NW agrees to accept production of documents using that time period, while reserving its right to request additional documents in the future.

Sabre also objects to producing papers filed with DOT by third parties in the CRS Rulemaking, on the assumption that NW already has its own copies of the same documents.  NW believes that it does have papers filed by third parties in the CRS Rulemaking, and therefore Sabre need not produce them.

#39:    NW clarified that if Sabre does not maintain cost data in the manner described in the request, it should produce data in whatever manner the data is customarily prepared and maintained that includes the costs incurred by Sabre in providing GDS services. With that clarification, Sabre withdraws its overbreadth/relevance objection.

#40:    NW clarified that Sabre need not produce duplicates of responsive documents; one copy of each responsive document will be sufficient.  Sabre will produce its 10-K and 10-Q SEC filings and, with respect to the business unit that includes the Sabre GDS business,  "financial statements" "income statements" statements of profit and loss, and the other standard accounting forms that underlie its publicly filed financial records. Northwest agrees to review these records before determining whether to request production of additional financial and cost information.

#41:    NW proposes the following revised request in lieu of current Requests 41, 52, and 56:

From January 1, 2000, to September 27, 2004, all business plans, studies, reports or analyses, whether prepared by Sabre or by third parties, that discuss

(a)     business strategies with respect to Sabre's participation in the business of providing travel agency subscribers information about, and the ability to book, transportation services offered by airlines; and

6

(b)    the historical or projected future financial performance of Sabre's participation in the business of providing travel agency subscribers information about, and the ability to book, transportation services offered by airlines.

Subject to the caveats noted above and its General Objections, Sabre agrees to produce responsive documents.

#42:    Sabre withdraws its vagueness objection and will comply with the request.

#43:    Sabre will produce non-duplicative copies of whatever organizational charts exist for the period encompassed by NW's requests. While no "org charts" as such have been located for the August to September 2004 period, Sabre has and will provide Northwest a list of employees and their job titles at that time.

#44:    NW clarifies that subpart (a) concerns only Sabre, Inc. and Sabre Travel International, Ltd., not the publicly held parent company. With that clarification, Sabre withdraws its overbreadth/relevance objection and will comply with the request.

#45:    NW clarifies that "rely" means "use." Sabre proposes that this request be revised as follows, and Northwest agrees:

All documents discussing or addressed to the subject of the relative use by airlines of travel agents for the sale and distribution of tickets as opposed to other distribution channels.

#46:    Again, NW clarifies that "rely" means "use." Sabre proposes that this request be revised as follows, and Northwest agrees:

All documents discussing or addressed to the subject of the relative use by travel agents of GDSs or particular GDSs for access to flight and fare information and for booking airline tickets as opposed to other distribution channels.

#47:    NW agrees to revise this request as follows, and in return Sabre agrees to withdraw its vagueness objection:

All documents that analyze or discuss the extent to which travel agency subscribers to the Sabre GDS pay fees to Sabre (including but not limited to transaction fees) for use of the Sabre GDS and/or the extent to which Sabre makes incentive or productivity payments to travel agency subscribers for using the Sabre GDS. In responding to this particular request, Sabre need not produce documents concerning payments made by specific travel agencies or to specific travel agencies.

7

#48:    NW clarifies that this request is not directed to documents that identify, analyze, or discuss specific travel agents, and further clarifies that "pay" refers to monetary compensation. Sabre will provide responsive documents within the parameters of No. 20, except that all four GDS will be included.

#49:    Northwest agrees to limit the request to Internet-only sellers of travel services that use the Sabre GDS, to the extent known by Sabre. In return, Sabre withdraws its overbreadth and relevance objections.

#50:    Sabre Proposes that this request be revised as follows, and Northwest agrees:

        All documents discussing or addressed to the subject of the use by airlines of booking distribution channels for airline tickets other than those using ARC-accredited travel agents.

#51:    In light of Requests 23-25, NW agrees to limit this request to documents that analyze or discuss barriers to entering business in competition with Sabre's GDS. Sabre agrees to withdraw its overbreadth and vagueness objections.

#52:    Northwest replaces this request with revised Request 41.

#53:    Sabre has verified that it previously served NW with all documents responsive to this request in the course of the CRS Rulemaking. NW agrees Sabre may produce, in unredacted form, only copies of those documents that it previously served on NW in redacted form.

#54:    Northwest agrees to revise this request as follows:

        All documents that discuss actual or potential effects on Sabre's business or business plans of those portions of the DOT's Final Rule in the CRS Rulemaking (published at 69 Fed. Reg. 976 (Jan. 7, 2004)) that terminated (1) after six months the "Rules Barring Display Bias" (see 69 Fed. Reg. at 1002-1005) and (2) the rule requiring each system to make available to all participating carriers marketing and booking data it chooses to generate from bookings made by system users (see 69 Fed. Reg at 1013-1015).

#55:    Sabre represents that current versions of the Participating Carrier Agreement identify the levels of participation available to North American carriers. Therefore, with respect to North American carriers, NW agrees that production of PCAs in response to other requests will be sufficient. With respect to PCAs for Europe, Latin America and Asia, at this time Northwest will accept production of the form PCA agreements used by Sabre (or its affiliates) in those regions during the time period encompassed by Northwest's requests.

#56:    Sabre has agreed to produce documents in response to Request No. 41, as revised, and therefore NW withdraws this request.

#57:    Sabre and NW will each investigate further whether they are under any restrictions or limitations on their ability to produce communications with DOJ or DOT regarding NW's Shared GDS Fee Initiative or Sabre's response to it. Northwest and Sabre believe that both parties may produce, subject to the protective order, documents responsive to the DOJ's investigation into NW's GDS fee.

ON BEHALF OF NORTHWEST:

Parker C. Folse III

Date:  April 12, 2005

ON BEHALF OF THE SABRE PARTIES:

Roderick M. Thompson

Date:  April 12, 2005

# EXHIBIT  6

# BOIES, SCHILLER & FLEXNER LLP

5301 WISCONSIN AVENUE, N.W. • WASHINGTON, D.C. 20015-2015 • PH. 202.237.2727 • FAX 202.237.6131

April 14, 2005

**By E-Mail and U.S. Mail**

Mark J. Altschul
McDermott Will & Emery
227 West Monroe Street
Chicago, IL  60606-5096
maltschul@mwe.com

     Re:    *Sabre Inc., et al. v. Northwest Airlines, Inc.*, Civil Action No. 4:04-CV-612-Y, Consolidated with 4:04-CV-907-Y (N.D. Tex.)

Dear Mr. Altschul:

     In prior correspondence relating to the subpoena served by Northwest Airlines on Galileo International, Inc., you set forth Galileo's position that the subpoena is premature in light of Sabre's pending motion to stay antitrust discovery pending resolution of its motion to dismiss.  I understand that you have now been notified by Sabre that its motion to stay has been withdrawn as moot and that Sabre has supplied you a copy of the agreement between the parties memorializing the compromises they reached.  We would like to set up a time to discuss Galileo's remaining objections to Northwest's subpoena, as well as a schedule for the production of responsive documents.  Please let Daniel Low or me know when, during the week of April 18 or 25, would be a convenient time.

     Sincerely,

     Amy J. Mauser

# EXHIBIT   7

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.

April 19, 2005

VIA FACSIMILE AND MAIL

Amy J. Mauser
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington D.C. 20015

Re:    *Sabre, Inc. v. Northwest Airlines, Inc.*

Dear Ms. Mauser:

I am in receipt of your letter expressing your interest to discuss Galileo's objections to the subpoena served by Northwest Airlines. We are currently reviewing the Resolution of Sabre's Disputed Objections to Northwest's First Set of Production Requests and are in the process of assessing the latest events with our client. I will contact you once we have sufficiently evaluated how Galileo intends to proceed.

Sincerely,

Mark J. Altschul

cc:    Thomas DeMay
       David F. Wentzel

CHI99 4459880-1.069834.0012

# EXHIBIT  8

**Daniel Low**

| | |
|---|---|
| **From:** | Amy Mauser |
| **Sent:** | Wednesday, May 25, 2005 11:36 AM |
| **To:** | 'maltschul@mwe.com'; 'dwentzel@mwe.com' |
| **Cc:** | Daniel Low |
| **Subject:** | NW/Sabre -- Draft Protective Order Addressing Third-Party Discovery |



Amended
otective Order - Red

Mark and David,

Attached for your review/comments is a revised draft protective order addressing the concerns that Galileo has raised relating to the production of sensitive information. We have shared the draft with Sabre, and while Sabre may have some comments concerning the draft, Sabre's counsel said that we can let you know that it views the draft "as a serviceable working draft."

I am also sending the draft to the other third parties that have received subpoenas from Northwest.

I'd appreciate your letting me know what, if any comments, you have concerning the draft by next week.

I look forward to hearing from you.

my

Amy J. Mauser
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C.  20015
Phone:  202-895-7564
Fax:  202-237-6131
E-mail:  amauser@bsfllp.com

# EXHIBIT  9

## Daniel Low

**From:**                         Amy Mauser
 ~~Sent:~~                        Monday, June 13, 2005 12:51 PM
                                  'maltschul@mwe.com'; 'dwentzel@mwe.com'
**Cc:**                           Daniel Low
**Subject:**                      Northwest's Subpoena/Amended Protective Order

   

Amended                Amended
~~otective Order --~~   ~~votective Order -- Re~~

**Mark and David,**

We have incorporated into the Stipulation and Protective Order Addressing Third-Party Discovery all of the comments that we have received from third-parties. I have attached two versions of the protective order, a clean version and a redlined version reflecting the changes that were made since the last draft that I sent you. Sabre's counsel has reviewed this version of the protective order, and is in agreement with its terms. We would like to submit the protective order to the Court later this week. Accordingly, I would appreciate your reviewing the draft and letting me know no later than Wednesday whether you have any additional comments concerning the draft. Also, please let me or Daniel Low know when would be a convenient time next week to discuss Galileo's production in response to Northwest's subpoena.

Thanks,

Amy


Amy J. Mauser
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Phone: 202-895-7564
Fax: 202-237-6131
E-mail: amauser@bsfllp.com

1

# EXHIBIT   10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SABRE, INC., *et al.* | § | |
| | § | CIVIL ACTION NO. 4:04-CV-612-Y |
| vs. | § | Consolidated with 4:04-CV-907-Y |
| | § | **(ECF)** |
| NORTHWEST AIRLINES, INC. | § | |

**STIPULATION AND**
**PROTECTIVE ORDER NO. 2 ADDRESSING NON-PARTY DISCOVERY**

Pursuant to Fed. R. Civ. P. 26(c), IT IS HEREBY STIPULATED AND AGREED by the

undersigned counsel Sabre, Inc., Sabre Holdings Corporation, and Sabre Travel International

Ltd., d/b/a Sabre Travel Network (collectively referred to hereinafter as "Sabre") and Northwest

Airlines, Inc. ("Northwest") (collectively, "the parties" or singularly, "a party") that discovery in

the above-entitled action necessarily involves the production of information which the parties

may consider to be sensitive, confidential, proprietary, and/or protected by a statutory or other

legal privilege.  The parties further anticipate that discovery from non-parties will also involve

information that they may consider to be sensitive, confidential, proprietary, and/or protected by

a statutory or other privilege.

The parties believe that a protective order restricting the use and dissemination of

confidential, proprietary, and commercially sensitive information is necessary to facilitate

discovery in this matter among the parties.  The parties also believe that such an order is

necessary to enable the parties to conduct discovery of non-parties that may have similar

concerns regarding their proprietary or competitively sensitive information.  The parties also

recognize that non-parties may have concerns regarding their proprietary or competitively

sensitive information that are not addressed in the parties' prior Stipulation and Protective Order

1

and anticipate that there may be a need for supplemental stipulations and protective orders to address those particular concerns.

ACCORDINGLY, IT IS HEREBY STIPULATED AND AGREED that:

1.    All information produced during pretrial discovery in this case will be used solely for the purposes of this litigation and not for any other purpose, including any business purpose, and will not be used or disclosed outside the context of this litigation.

2.    Nothing in this Amended Stipulation and Protective Order No. 2 ("the Order") is intended to constitute an agreement regarding the scope of discovery.

3.    Any document, deposition testimony, interrogatory response, response to requests for admissions, or other information given by or on behalf of the parties (or any of their attorneys or other agents), or by or on behalf of non-parties (or any of their attorneys or other agents) and all information derived therefrom concerning trade secrets, proprietary or competitively sensitive information or other confidential research, development, or commercial information may be designated "Confidential" or "Highly Confidential" by either Northwest or Sabre or, in the case of non-parties, "Restricted Access" where the producing party or non-party has a reasonable, good faith belief that the information so designated is a trade secret or other confidential information within the meaning of Rule 26(c)(7) of the Federal Rules of Civil Procedure, or is otherwise proprietary or competitively sensitive information. Information may be designated "Highly Confidential" only if (a) in the case of Sabre, it relates to: (1) Sabre's plans or policies for pricing of Sabre services to airlines, (2) Sabre's pricing or terms with other airlines, (3) plans and strategies for marketing Sabre to travel agents or to corporations or Travelocity to consumers or to businesses, or (4) merger or acquisition activity; and (b) in the case of Northwest, it relates to (1) plans or strategies concerning Northwest's actual or

2

contemplated agreements with any global distribution system or other channel for the

distribution of fares and flight information or booking capability, (2) the pricing or other terms

and conditions of Northwest's contracts with other GDSs or other systems for the distribution of

airline fare and flight information and booking capability to travel agents or consumers, (3)

Northwest's plans or strategies for reducing distribution costs, and (4) merger, acquisition, or

divestiture activity.  Notwithstanding the foregoing, neither party shall mark as "Highly

Confidential": (a) in the case of Northwest, plans, strategies or analyses concerning its Shared

GDS Fee initiative; and (b) in the case of Sabre, plans strategies or analyses relating to

Northwest's Shared GDS Fee initiative or Sabre's response thereto.   Information may be

designated "Restricted Access" only if (a) in the case of a non-party GDS, it relates to:  (1) the

GDS' plans or policies for pricing its services to airlines, (2) the GDS' pricing or terms with

airlines other than Northwest, (3) plans or strategies for marketing its services, (4) merger or

acquisition activity, and (5) plans, strategies, or analyses relating to Northwest's shared GDS Fee

initiative or Sabre's response thereto; and (b) in the case of a non-party airline, it relates to (1)

plans or strategies concerning the airline's actual or contemplated agreements with any global

distribution system other than Sabre or other channel for the distribution of fares and flight

information or booking capability, (2) the pricing or other terms and conditions of the airline's

contracts with GDSs other than Sabre or other systems for the distribution of airline fare and

flight information and booking capability to travel agents or consumers, (3) the airline's plans or

strategies for reducing distribution costs, (4) merger, acquisition, or divestiture activity, and (5)

plans, strategies, or analyses relating to Northwest's Shared GDS Fee initiative or Sabre's

response thereto.  For purposes of this Order only, the parties agree that subpart (a) of the

foregoing provision applies to G2 Switchworks, Inc.

4.    "Confidential" Information, except with the prior consent of the producing party or non-party or upon prior Order of this Court, shall not be disclosed to any person other than the following:

a.    Outside counsel of record for the parties in the above-captioned action and their secretaries, paralegals, or other support personnel involved in this litigation ("Outside Counsel of Record");

b.    Two designated in-house attorneys for Northwest who are identified on Exhibit B pursuant to paragraphs 7, 8, and 9 and, where necessary, their secretaries or paralegals ("In-House Counsel");

c.    Two designated in-house attorneys for Sabre who are identified on Exhibit B pursuant to paragraphs 7, 8, and 9 and, where necessary, their secretaries or paralegals ("In-House Counsel");

d.    Outside experts and/or consultants who are not employees of any party and who are expressly retained to assist outside counsel of record for the parties solely for the prosecution or defense of this litigation or the preparation of this action for trial, including, but not limited to, independent auditors, accountants, statisticians, economists and other experts, and the employees of such persons ("Outside Experts");

e.    A party witness after his or her deposition has been noticed and confirmed, or a non-party witness who is employed by the producing party or who was an author or recipient of the Confidential Information; and

f.    The Court.

4

5.    "Highly Confidential" Information, except with the prior consent of the producing party or non-party or upon prior Order of this Court, shall not be disclosed to any person other than the following:

    a.    Outside Counsel of Record;

    b.    One designated in-house attorney for Northwest, responsible for supervising this litigation, who agrees not to advise Northwest concerning the negotiation of terms and conditions of participation agreements with any Global Distribution System, except with respect to any negotiations to settle this lawsuit, and who is identified on Exhibit B pursuant to paragraphs 7, 8, and 9 and, where necessary, his or her secretaries or paralegals ("In-House Counsel"). This restriction will expire one year after the final resolution of this matter;

    c.    One designated in-house attorney for Sabre, responsible for supervising this litigation, who agrees not to advise Sabre concerning the negotiation of terms and conditions of agreements for participation in the Sabre Global Distribution System with Northwest, except with respect to any negotiations to settle this lawsuit, and who is identified on Exhibit B pursuant to paragraphs 7, 8, and 9 and, where necessary, his or her secretaries or paralegals ("In-House Counsel"). This restriction will expire one year after the final resolution of this matter;

    d.    Outside Experts;

    e.    A witness at a deposition if the witness is an employee of the producing party or non-party, an Outside Expert, or a former employee of a party or

non-party who authored or received the "Highly Confidential"

Information while employed by a party or non-party whose "Highly

Confidential" Information is sought to be used in the deposition (however,

one party's or non-party's "Highly Confidential" Information may not be

shown to another party's or non-party's witness unless otherwise

permitted by this Order , there is written agreement of the party to whom

the "Highly Confidential" Information belongs, or upon prior order of the

Court), provided that only the deposition reporters, deponent and other

persons qualified pursuant to paragraph 5 are present; and

    f.    The Court.

6.    "Restricted Access" Information, except with the prior consent of the producing

non-party or upon further Order of this Court (provided that reasonable notice is provided to the

producing non-party that a Court order is being requested by a party for such disclosure), shall

not be disclosed to any persons other than the following:

    a.    Outside Counsel of Record;

    b.    Outside Experts;

    c.    A witness at a deposition if the witness is an employee of the producing

non-party, an Outside Expert, or a former employee of a non-party who

authored or received the "Restricted Access" Information while employed

by a non-party whose "Restricted Access" Information is sought to be

used in the deposition (however, one non-party's "Restricted Access"

Information may not be shown to another party's or non-party's witness

unless otherwise permitted by this Order, there is a written agreement of

6

the non-party to whom the "Restricted Access" Information belongs, or

upon order of the Court (provided that reasonable notice is provided to the

producing non-party that a Court order is being requested by a part for

such disclosure), and further provided that only the deposition reporter,

deponent, and other persons qualified pursuant to paragraph 7 are present;

    d.    The Court; and

    e.    As otherwise agreed in writing by the producing non-party upon request

    of the party seeking such disclosure.

    7.    The In-House Counsel identified on Exhibit B hereto, as of the date of this Order,

have been approved by all parties.

    8.    If an In-House Counsel is leaving the employ of a party or if a party seeks to

substitute its In-House Counsel, then that party shall give the other party ten (10) business days

written notice of the name of the person to be substituted or added as its In-House Counsel.

Absent written objection by the other party within ten (10) business days of that notice, the

additional or substitute person shall become a designated In-House Counsel. In the event that

the parties are unable to resolve a disagreement about the substitute or additional designation,

either party may move the Court for a resolution of the dispute. The objecting party shall have

the burden of establishing that, for good cause shown, "Confidential" or "Highly Confidential"

Information should not be disclosed to the substitute In-House Counsel. Neither party shall

unreasonably withhold consent to the designation of a substitute In-House Counsel. Until a

dispute regarding the designation of a substitute In-House Counsel is resolved, "Confidential" or

"Highly Confidential" Information shall not be disclosed to the substitute In-House Counsel.

An In-House Counsel so designated under this Order shall remain subject to the terms and conditions of this Order if he or she leaves the employ of the party.

9.      Any person who qualifies under Paragraphs 6, 7, or 8 to receive "Confidential," "Highly Confidential," or "Restricted Access" Information, other than Outside Counsel of Record and staff (if applicable), , prior to being given any "Confidential," "Highly Confidential," or "Restricted Access" Information, shall read this Order, and shall execute a sworn statement, in the form annexed hereto as Exhibit A, indicating that he/she has read this Order and will abide by its terms, before being give access to "Confidential, "Highly Confidential," or "Restricted Access" Information.  No person other than outside counsel of record and staff may have access to "Confidential," "Highly Confidential," or "Restricted Access" information produced by a non-party unless such person executes the sworn statement, in the form annexed hereto as Exhibit A, indicating that he or she has read this  Order and will abide by its terms; a person other than Outside Counsel of Record and staff may not have access to "Confidential," "Highly Confidential," or "Restricted Access" information produced by a non-party based on his or her execution of Exhibit A to the original Stipulation and Protective Order entered in this matter. Sworn statements of Outside Experts and In-House Counsel shall be retained and made available upon request to all counsel.  Sworn statements of Outside Experts, however shall not be made available until such time as the party is obligated to identify such experts.

10.     Any deposition transcript or videotaped deposition containing "Confidential," "Highly Confidential," or "Restricted Access" Information shall be marked on the cover "Confidential,"  "Highly Confidential," or "Restricted Access" and shall indicate as appropriate within the transcript and on the videotape that information has been so designated.  A party or non-party may designate any portion of the transcript or videotape as containing "Confidential,"

8

"Highly Confidential," or "Restricted Access" Information by so advising the deposition

reporter, who shall indicate in the deposition transcript and on the videotape what portion(s) of

the testimony (or exhibits thereto) were so designated, or by so advising all other parties within

fourteen business days after receipt of the transcript. If a party marks as an exhibit at a

deposition information that a non-party has designated "Confidential," "Highly Confidential," or

"Restricted Access," counsel representing that party shall ensure that the exhibit and portions of

the transcript relating to the exhibit are likewise designated "Confidential," "Highly

Confidential," or "Restricted Access." Until fourteen business days have passed after the receipt

of any transcript, the entire transcript and videotape shall be deemed to contain "Confidential,"

"Highly Confidential," or "Restricted Access" Information. Nothing in this Order shall prevent

an employee of a party or outside litigation counsel (whether or not counsel of record) from

attending any deposition, except that only persons entitled to receive "Confidential," "Highly

Confidential," or "Restricted Access" Information shall be present when such information is

disclosed at a deposition. Counsel for the party seeking to disclose such "Confidential," "Highly

Confidential," or "Restricted Access" Information at a deposition shall, prior to disclosing such

information, advise counsel for all other parties and, when applicable, counsel for counsel for a

non-party, so that appropriate safeguards can be taken to ensure that only persons entitled to

receive such information pursuant to the terms of this Order are present when such information

is disclosed.

      11.    In the event that counsel for any party or non-party determines to file with or

submit to the Court any "Confidential," "Highly Confidential," or "Restricted Access"

Information, or any papers revealing such information, such documents shall be filed in a sealed

envelope bearing the caption of this action, the words "Confidential," "Highly Confidential," or

"Restricted Access" Information and a statement in substantially the following form:

> This envelope contains documents that are subject to a Protective
> Order. The envelope shall not be opened nor the contents thereof
> displayed or revealed except by Order of the Court. Violation
> thereof may be regarded as contempt of the Court.

12.    The use of any "Confidential," "Highly Confidential," or "Restricted Access"

Information for the purpose of any hearing or trial which is open to the public is not addressed at

this time, but will be the subject of future agreement or Order as the need may arise. Non-parties

shall have an opportunity to review and comment on any proposed stipulation between the

parties for the disclosure of information at any hearing or trial which is open to the public; to the

extent a non-party does not agree to such proposed stipulation, the non-party shall have an

opportunity to be heard by the Court. If any party intends to use "Confidential," "Highly

Confidential," or "Restricted Access" Information produced by a non-party at any hearing or

trial which is open to the public, such party shall provide written notice to such non-party no

later than ten (10) business days prior to the date of such hearing or trial. Either party, or any

non-party, may give notice that it is eliminating or lowering a previous designation of a

document or other material as "Confidential," "Highly Confidential," or "Restricted Access"

Information. In that event, if the document or other material is used as an exhibit at trial or

otherwise displayed to the jury, all deposition statements and all marking indicating that the

document or material had previously been designated by the party or non-party as

"Confidential," "Highly Confidential," or "Restricted Access" Information shall be removed (or

edited, in the case of a videotaped deposition) or lowered to the new designation prior to offering

the deposition testimony or document or material into evidence or displaying same to the jury,

and no mention shall be made of the previous designation of confidentiality or restriction. If any

document or other material designated by a party or non-party as "Confidential," "Highly Confidential," or "Restricted Access" Information is used as an exhibit at trial or otherwise displayed to the Jury, the producing party or non-party shall be entitled to add to the marking "Confidential," "Highly Confidential," or "Restricted Access" Information the following language: "Pursuant to the Protective Order Entered in This Case." A similar statement may be added to any deposition transcript or videotaped deposition. This paragraph is without prejudice to the right of any party to request, or of any other party to oppose, by motion in limine or otherwise, that the Court prohibit any party from displaying any markings indicating that a document or material had been designated by any party or non-party as "Confidential," "Highly Confidential," or "Restricted Access" Information, or that the Court permit a party to add an explanation or that the Court give an appropriate instruction.

13.     Any person receiving "Confidential," "Highly Confidential," or "Restricted Access" Information shall not disclose such information to any person who is not entitled to receive such information. Should a party learn that this provision has been breached with respect to information produced by a non-party, such party shall immediately notify the non-party.

14.     Nothing herein shall impose any restriction on the use or disclosure by a party of its own documents or information. Nor shall this Order be construed to prevent any party or its counsel or Outside Experts from making use as they see fit of documents or information which were lawfully available to the public or lawfully in the possession of the party, counsel, or expert prior to another party's or non-party's providing them, or which properly came into the possession of the party, counsel, or expert independent of any work on this litigation.

15.    Nothing contained in this Order or any designation of confidentiality or restriction hereunder or any failure to make such designation shall be used or characterized by any party as an "admission" by a party opponent.

16.    Entry of this Order shall be without prejudice to any motion for relief from the provisions hereof or to any other motion for further restriction on the production, exchange or use of any document or other information in the course of this action, or for continued enforcement of this Order. If a party disagrees with a producing party's or non-party's designation of information as "Confidential," "Highly Confidential," or "Restricted Access," such party shall provide to the producing party or non-party written notice of its disagreement and specifically identify the information in dispute.  If the dispute cannot be resolved informally, the party contesting the designation may file a motion for relief.  The party or non-party that designated the information as "Confidential," "Highly Confidential," or "Restricted Access" shall bear the burden of demonstrating that the information is entitled to protection from disclosure under applicable law.  Pending the Court's ruling, the party contesting the designation shall continue to treat the information in the manner required by this Order.  If the Court determines that a party improperly designated information "Confidential" or "Highly Confidential," the party that improperly designated the information shall pay the attorneys' fees and costs incurred by the party contesting the designation.

17.    The inadvertent production of any privileged or otherwise protected information, as well as the inadvertent production of information without an appropriate designation of confidentiality or restriction, shall not be deemed, consistent with applicable law, a waiver or impairment of any claim of privilege or protection, including, but not limited to, the attorney-client privilege, the protection afforded to work product materials or the subject matter thereof,

or of the confidential or restricted nature of any such information. Upon receiving notice from

the producing party or non-party that privileged information or work product material has been

inadvertently produced, all such information, and all copies thereof, shall be returned to the

producing party or non-party within two business days of receipt of such notice. Any analysis,

memoranda, or notes which were internally generated by the receiving party based upon such

information shall be destroyed. Upon receiving notice from the producing party or non-party

that "Confidential, "Highly Confidential," or "Restricted Access" Information has not been

appropriately so designated, all such information shall be redesignated and treated appropriately.

The party receiving such re-designated "Confidential," "Highly Confidential," or "Restricted

Access" Information shall make a reasonable good faith effort to ensure that any analysis,

memoranda, or notes which were internally generated based upon such information shall

immediately be treated in conformance with any such re-designation.

18.    All provisions of this Order restricting the use of information obtained during

discovery shall continue to be binding after the conclusion of this action, including all appeals,

and until further Order of the Court. Any and all originals and copies of documents, or other

information deemed to be "Confidential," "Highly Confidential," or "Restricted Access"

Information shall, at the option of the producing party or non-party, upon written notification of

the termination of the action, be returned to the producing party or non-party within 60 days

after a final judgment herein or settlement of this action or destroyed in that time frame (except

that outside counsel for each party (whether or not counsel of record) may maintain in its files

one copy of each pleading filed with the Court, and each written discovery request and response

thereto). Any analysis, memoranda or notes (excluding indices that do not summarize the

substance of "Confidential," "Highly Confidential," or "Restricted Access" Information) which

were internally generated based upon "Confidential," "Highly Confidential," or "Restricted Access" Information shall be destroyed. In the event that documents are returned to or destroyed at the request of the producing party or non-party, each counsel who has received such information shall certify in writing that all such documents have been returned or destroyed, as the case may be. Counsel retaining court reporters shall have the responsibility for ensuring their compliance with this paragraph. Any party that requested a non-party to produce information in this matter shall promptly notify such non-party of any settlement or final judgment in this matter.

19.    Neither this Order nor any party's or non-party's designation of information as "Confidential," "Highly Confidential," or "Restricted Access" shall affect the admissibility into evidence of the information so designated.

20.    The Court retains jurisdiction subsequent to settlement or entry of judgment to enforce the terms of this Order.

**Unless this order includes a clause that explicitly states that a particular local civil rule is modified as applied to this case, nothing in this order shall be construed to modify the provisions, operation, or effect of any local civil rule of this court.**

AGREED TO:

July 5, 2005                    By:    /s/ Parker C. Folse, III
                                       Parker C. Folse, III
                                       **SUSMAN GODFREY LLP**
                                       1301 Third Avenue, Suite 3100
                                       Seattle, WA 98101
                                       Telephone: (206) 516-3860

                                       John T. Suder
                                       **FRIEDMAN, SUDER & COOKE**
                                       604 East Fourth Street, Suite 200
                                       Fort Worth, TX 76102
                                       Telephone: (817) 334-0400

Thomas Tinkham
Theresa M. Bevilacqua
50 South Sixth Street, Suite 1500
**DORSEY & WHITNEY LLP**
Minneapolis, MN  55402-1498
Telephone:  (612) 340-2600

James P. Denvir
Amy J. Mauser
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W.
Washington, D.C.  20015
Telephone:  (202) 237-2727

**ATTORNEYS FOR NORTHWEST
AIRLINES, INC.**

By:      /s/ Neil A. Goteiner
Neil A. Goteiner
CA State Bar No. 083524 (*Pro hac vice*)
Roderick M. Thompson
CA State Bar No. 096192 (*Pro hac vice*)
Thomas P. Mayhew
CA State Bar  No. 183539 (*Pro hac vice*)
Lauren Cullen Roche
CA State Bar No. 174596
Frank Riebli
CA State Bar No. 221152 (*Pro hac vice*)
Jessica K. Nall
CA Bar No. 215149 (*Pro hac vice*)
Racheal Turner
CA State Bar No. 226441 (*Pro hac vice*)
**FARELLA BRAUN & MARTEL LLP**
Russ Building
235 Montgomery Street
San Francisco, CA  94104
Telephone:  (415) 954-4485

R.H. Wallace
Texas State Bar No. 20778700
**SHANNON GRACEY RATLIFF &
MILLER, LLP**
777 Main Street, Suite 3800
Fort Worth, TX 76102
Telephone: (817) 336-9333

Fred H. Bartlit
IL State Bar No. 127280
Eric Olson
CO State Bar No. 36414 (*Pro hac vice*)
**BARTLIT, BECK, HERMAN,
PALENCHAR & SCOTT LLP**
1899 Wynkoop Street, 8th Floor
Denver, CO 80202
Telephone: (303) 592-3162

Chris Lind
IL State Bar No. 6225464 (*Pro hac vice*)
Shayna S. Cook
Texas Bar No. 24032096
**BARTLIT, BECK, HERMAN,
PALENCHAR & SCOTT LLP**
Courthouse Place, 54 West Hubbard Street
Chicago, IL 60610
Telephone: (312) 494-4400

**ATTORNEYS FOR SABRE, INC.,
SABRE HOLDINGS CORP., and
SABRE TRAVEL INTERNATIONAL
LIMITED**

SO ORDERED.

SIGNED July 19, 2005.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

16

## EXHIBIT A

| | | |
|---|---|---|
| SABRE, INC., *et al.* | § | CIVIL ACTION NO. 4:04-CV-612-Y |
| | § | Consolidated with 4:04-CV-907-Y |
| VS. | § | **(ECF)** |
| | § | |
| NORTHWEST AIRLINES, INC. | § | |

## SWORN ACKNOWLEDGEMENT REGARDING PROTECTIVE ORDER

I, _____, do attest as follows:

1.    I have read the Stipulation and Protective Order No. 2 Addressing Non-Party Discovery entered on _____, 2005 in the above-captioned action.

2.    I fully understand the terms of the Stipulation and Protective Order No. 2 Addressing Non-Party Discovery and agree to be bound by them, including, without limitation, the provisions that I shall not use any materials subject to said Stipulation and Protective Order No. 2 Addressing Non-Party Discovery except for the purpose of my participation in the above-captioned action; that I shall not disclose "Confidential," "Highly Confidential," or "Restricted Access" Information to any person not expressly entitled to receive it under the terms of the Stipulation and Protective Order; that I shall not use "Confidential," "Highly Confidential," or "Restricted Access" Information for any commercial purpose (excluding any information which properly came into my possession independent of any work in this litigation); that I understand that violation of the Stipulation and Protective Order No. 2 Addressing Non-Party Discovery may subject me to sanctions for contempt of court and/or a claim for damages and injunctive relief by the party producing the "Confidential," "Highly Confidential," or "Restricted Access"

Information; and that I agree to submit to the jurisdiction of the United States District Court for

the Northern District of Texas for the sole purpose of having the terms of this Stipulation and

Protective Order enforced.

    3.       I declare under the penalty of perjury that the foregoing is true and correct.


Executed on _____.


_____

**EXHIBIT B**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SABRE, INC., *et al.* | § | |
| | § | CIVIL ACTION NO. 4:04-CV-612-Y |
| VS. | § | Consolidated with 4:04-CV-907-Y |
| | § | **(ECF)** |
| NORTHWEST AIRLINES, INC. | § | |

**DESIGNATION OF IN-HOUSE COUNSEL**

Pursuant to paragraphs 4(b), 4(c), 5(b), 5(c), 7, and 8 of the Stipulation and Protective

Order No. 2 Addressing Non-Party Discovery entered on _____, 2005

in the above-captioned action, the parties hereby identify the following In-House Counsel as

having access to information or material designated as "Confidential," and further identify one

In-House Counsel as having access to information or material designated as "Highly

Confidential":

I.    **Access To "Confidential" Information Or Material:**

    1.  Northwest Airlines, Inc. ("Northwest"):

        a)    Barry Simon        Senior Vice-President and General Counsel

        b)    Peter Kenney        Vice-President Law

    2.  Sabre, Inc., Sabre Holdings Corporation, and Sabre Travel International Ltd.,d/b/a
        Sabre Travel Network ("Sabre"):

        a)    David Schwarte        Executive Vice-President and General
                               Counsel

      b)     Scott Roberts             Senior Attorney

## II.   Access To "Highly Confidential" Information Or Material:

   2.     Northwest:

      a)     Peter Kenney          Vice-President Law

   2.     Sabre:

      a)     David Schwarte        Executive Vice-President and General Counsel

Upon execution of the Sworn Acknowledgement, pursuant to paragraph 9 of the Stipulation and Protective Order, by the In-House Counsel designated above, these individuals shall have access to information designated as "Confidential" and "Highly Confidential."

# EXHIBIT   11

**Amy Mauser**

| | |
|---|---|
| **From:** | Daniel Low |
| **Sent:** | Thursday, August 18, 2005 8:14 PM |
| **To:** | 'maltschul@mwe.com'; 'dwentzel@mwe.com' |
| **Cc:** | Amy Mauser |
| **Subject:** | RE: Protective Order No. 2 |

With the attachment this time . . .

-----Original Message-----
**From:**    Daniel Low
**Sent:**    Thursday, August 18, 2005 8:12 PM
**To:**    'maltschul@mwe.com'; 'dwentzel@mwe.com'
**Cc:**    Amy Mauser
**Subject:**    Protective Order No. 2

Mark and David,

I'm attaching a final signed copy of Stipulation and Protective Order No. 2, which addresses confidentiality concerns raised by third parties.  It permits you to designate documents as "Restricted Access," which has the effect of limiting access to outside counsel (plus court personnel and the like).

Given Galileo's other objections to Northwest's document subpoena, however, it is my understanding that Galileo is still unwilling to produce documents responsive to the subpoena.  If that understanding is incorrect, please let me know.

Thanks,

Daniel L. Low
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, NW
Suite 800
Washington, DC  20015

202.274.1130 (Phone)
202.237.6131 (Fax)
dlow@bsfllp.com
www.bsfllp.com

---

*This message and any attached documents contain confidential and/or privileged information from the law firm of Boies, Schiller & Flexner LLP. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by telephone or reply e-mail and delete this message.*



Stipulation &
Protective Order...

# EXHIBIT   12



Not Reported in F.Supp.                                                                                   Page 1
Not Reported in F.Supp., 1991 WL 264549 (E.D.La.)
**(Cite as: 1991 WL 264549 (E.D.La.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.
COVIA PARTNERSHIP
v.
RIVER PARISH TRAVEL CENTER, INC.
**Civ. A. No. 90-3023.**

Dec. 4, 1991.

MINUTE ENTRY

DUPLANTIER, District Judge.

*1 The motion to review magistrate's order, filed on behalf of defendant, River Parish Travel Center, Inc., scheduled for hearing on December 4, 1991, was considered this date on memoranda. The motion is DENIED, and the magistrate's order of November 8, 1991, is affirmed. The order is not clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A).

The magistrate's order granted plaintiff's motion to compel production of the Worldspan contract and granted defendant's motion for protective order by limiting disclosure of the contract to counsel for plaintiff, Covia Partnership. Defendant argues that the Worldspan contract is not subject to discovery because it is irrelevant and confidential. Defendant's argument that the contract is irrelevant is unpersuasive.

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ... if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). The contents of the Worldspan contract may be relevant to defendant's motivation for terminating its contract with plaintiff and to defendant's claim for damages against plaintiff. The confidentiality clause in the Worldspan contract does not shield it from discovery. There is no absolute privilege for confidential information or trade secrets. Federal Open Market Committee v. Merrill, 443 U.S. 340, 362 (1979); Coca-Cola Bottling Co. v. Coca-Cola Co., 107 F.R.D. 288, 292-94 (E.D.Del.1985); Dart Drug Corp. v. Corning Glass Works, 480 F.Supp. 1091, 1106 (D.Md.1979). Parties may not foreclose discovery by contracting privately for the confidentiality of documents. See Bennett v. La Pere, 112 F.R.D. 136, 140 (D.R.I.1986); Grumman Aerospace Corp. v. Titanium Metals Corp., 91 F.R.D. 84, 87-88 (E.D.N.Y.1981).

The magistrate ordered that the Worldspan contract be disclosed only to plaintiff's counsel. If defendant desires a more detailed protective order, it should propose such an order to plaintiff, which I will sign if plaintiff agrees to the form. Otherwise, I will resolve any dispute as to the terms thereof.

Not Reported in F.Supp., 1991 WL 264549 (E.D.La.)

**Motions, Pleadings and Filings** (Back to top)

•            2:90cv03023            (Docket)
(Aug. 21, 1990)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   13



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 34235978 (M.D.Fla.)
**(Cite as: 2000 WL 34235978 (M.D.Fla.))**

Page 1

**H**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Florida.
VOYEUR DORM, L.C.; Entertainment Network,
Inc.; Autumn Dawn Marenger; Dan
Marshlack; and Sharon Gold Marshlack, Plaintiffs,
v.
CITY OF TAMPA, FLORIDA, Defendant.
**No. 8:99-CV-2180-T-24F.**

April 19, 2000.

Luke Charles Lirot, Mark R. Dolan, Luke Charles
Lirot, P.A., Tampa, FL, for plaintiffs.

Jerry M. Gewirtz, City Attorney's Office, Tampa,
FL, for defendant.

ORDER

SCRIVEN, Magistrate J.

*1 This matter comes before the Undersigned on the motion of the Plaintiffs for protective order from the Defendant City's propounded document discovery and Defendant's motion to compel Plaintiffs to produce the requested discovery. The Court, having reviewed the legal authority cited and the argument of the parties through their respective memoranda and being otherwise fully advised in the premises, and for the reasons that follow, ORDERS that the motion for protective order (Dkt.23) be DENIED and that the motion to compel (Dkt.26) be GRANTED.

In this action, the Plaintiffs have invoked this Court's jurisdiction to resolve whether an Internet broadcast that they produce from a residential neighborhood properly and constitutionally falls within the City's regulatory authority, particularly the adult use restrictions that are a part of the City's regulatory structure. Having themselves invoked the Court's jurisdiction to consider this matter, the Plaintiffs, through this rather perfunctory motion for protective order, seek to prevent the City from taking virtually any discovery it seeks in order to establish the nature and the extent of the Plaintiffs' business. Specifically, Defendant seeks payroll and personnel information, subscriber charges, methods means and copies of video recordings, advertisements, and contracts with providers of services or others, as well as general discovery related to the contentions made by the Plaintiffs in the complaint.

Plaintiffs acknowledge the breadth of discovery under the Federal Rules of Civil procedure, particularly as it relates to relevancy determinations. Yet, Plaintiffs seek to avoid discovery in this case, primarily on the contention that the discovery is not relevant. Plaintiffs, interestingly, do not contend that the ultimate fact the City seeks to prove through the discovery-do they run an adult establishment business from the residence-is not relevant to the dispute. Rather, Plaintiffs ask that they be allowed to stipulate that they are conducting business activities and that the Court find the extent of these activities is irrelevant to a determination of the issues Plaintiffs present in this case.

Additionally, Plaintiffs contend that "most of the documents sought by the City" are protected as trade secret, confidential research development or commercial information which should not be disclosed. Plaintiffs offer no evidentiary support for this contention, by way of affidavit or otherwise, and do not even argue with particularity those areas within the discovery they contend are protected.

Plaintiffs' motion is not well presented or taken. Having asked the Court to review their business activities to determine whether they fall within the parameters of the City's ordinance and to determine whether they are constitutionally protected, Plaintiffs cannot prevent the development by the Defendant of evidence going to establish the nature and extent of that business activity. Moreover, the Plaintiffs have failed to carry their burden of proof that any of the discovery sought is protected trade secret information. See Rule 26(c), Fed.R.Civ.P.; Kaiser Aluminum & Chem. Corp. Phosphate Eng'g & Constr. Co., Inc., 153 F.R.D. 686, 688 (M.D.Fla.1994) ("For a protective order to be granted, a party must show that the information is confidential and that the disclosure would be harmful."). Even if some of the discovery were protected, the Federal Rules of discovery contemplate their production in a manner designed to prevent improper disclosure where the information is relevant to matter at issue in litigation. See Rule 26(c)(7), Fed.R.Civ.P. (court may order that "a trade secret or other confidential research, development, or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 34235978 (M.D.Fla.)
**(Cite as: 2000 WL 34235978 (M.D.Fla.))**

Page 2

commercial information ... be revealed in only a designated way ...").

**\*2** Accordingly, any discovery designated by the Plaintiffs as confidential on the face of the document shall be used solely for purposes of this litigation. Such documents shall not be filed with the Court absent prior notice to the Plaintiffs and an order from the Court permitting their filing under seal. Any witnesses or consultants who must be shown the discovery shall agree beforehand not to disclose the contents of the discovery outside the litigation and shall stipulate to be subject to the jurisdiction of this Court for enforcement of this duty of confidentiality. At the conclusion of the litigation, all confidential discovery provided in accordance with this Order shall be returned to the Plaintiffs.

The Court ORDERS as follows:

Plaintiffs' Motion for Protective Order Regarding City of Tampa's First Request for Production of Documents Addressed to Plaintiffs (Dkt.23) is DENIED and Defendant's Motion to Compel Production of Documents from Plaintiffs (Dkt.26) is GRANTED in accordance with the foregoing. Plaintiffs shall produce to Defendant the responsive documents within twenty (20) days of the date of this order.

The Court further ORDERS that Plaintiffs shall bear the burden of Defendant's reasonable expenses and attorneys fees in connection with the motion to compel. The parties shall endeavor to stipulate to the amount of fees and expenses. If unable to do so, Defendant shall file an affidavit setting forth its fees and expenses within fifteen (15) days of the date of this order. Plaintiffs may file any objections to the amount of fees and costs requested within ten (10) days thereafter.

Not Reported in F.Supp.2d, 2000 WL 34235978 (M.D.Fla.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.