IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SABRE, INC., et al., )<br>)<br>v. )<br>)<br>NORTHWEST AIRLINES, INC. )<br>)<br>)<br>) | Misc. No. 05-MC-00166 (SLR)<br><br>Case Pending in the Northern District of Texas,<br>Fort Worth Division<br>Civil Action No. 4:04-CV-612-Y<br>Consolidated with 4:04-CV-907-Y (ECF) |

**GALILEO INTERNATIONAL INC.'S MEMORANDUM IN OPPOSITION TO
NORTHWEST AIRLINES, INC.'S MOTION TO COMPEL AND
<u>IN SUPPORT OF CROSS MOTION TO QUASH</u>**

Of Counsel:

Steven P. Handler
David F. Wentzel
Mark J. Altschul
McDermott, Will & Emery LLP
227 W. Monroe
Chicago, IL 60606
Telephone: (312) 372-2000
Fax: (312) 984-7700

Dated: September 7, 2005

James L. Holzman (Bar ID #663)
J. Clayton Athey (Bar ID #4378)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899-1328
Telephone: (302) 888-6500
Fax: (302) 658-8111
jlholzman@prickett.com
jcathey@prickett.com

**Attorneys for
Galileo International, Inc.**

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................2

      A.    The Texas Litigation ................................................................................................. 2

      B.    The Entities Involved ............................................................................................... 4

      C.    The Subpoena ........................................................................................................... 5

      D.    Northwest's Motion to Compel ............................................................................... 5

ARGUMENT ...................................................................................................................................6

I.    APPLICABLE LEGAL STANDARDS ..............................................................................6

      A.    Quashing a Subpoena on Confidentiality Grounds.................................................. 6

      B.    Quashing a Subpoena on Undue Burden Grounds .................................................. 6

      C.    Assigning Costs of Compliance............................................................................... 7

II.    ANALYSIS ..........................................................................................................................8

      A.    Northwest's Subpoena Should Be Quashed Due to the Proprietary Nature of the Requested Documents ................................................................................... 8

      B.    The Subpoena Should Be Quashed on Undue Burden Grounds........................... 11

      C.    This Court Should Protect Galileo From the Significant Cost of Compliance With the Subpoena.............................................................................. 13

CONCLUSION..............................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cmedia v. Lifekey Healthcare, LLC,*
216 F.R.D. 387 (N.D. Tex. 2003) .................................................................................. 7

*Coca-Cola Bottling Co. v. Coca-Cola Co.,*
107 F.R.D. 288 (D. Del. 1985) ...................................................................................... 6

*In re Letters Rogatory,*
144 F.R.D. 272 (E.D. Pa. 1992) ............................................................................... 8, 14

*In re Vitamins Antitrust Litigation,*
267 F. Supp. 2d 738 (S.D. Ohio 2003) ........................................................................ 12

*Johnson v. N. Y. Univ. Sch. of Educ.,*
205 F.R.D. 433 (S.D.N.Y. 2002) ................................................................................. 12

*Kisser v. Coalition for Religious Freedom,*
1995 U.S. Dist. LEXIS 14548 (E.D. Pa. 1995) ....................................................... 8, 14

*Konstantopoulos v. Westvaco Corp.,*
1991 U.S. Dist. LEXIS 17760 (D. Del. 1991) .............................................................. 6

*Linder v. Calero-Portocarrero,*
251 F.3d 178 (D.C. Cir. 2001) ...................................................................................... 7

*Lindner v. Dep't of Defense,*
133 F.3d 17 (D.C. Cir. 1998) ........................................................................................ 7

*Litton Indus., Inc. v. Chesapeake & Ohio Ry Co.,*
129 F.R.D. 528 (E.D. Wis. 1990) ............................................................................ 9, 10

*Mannington Mills, Inc. v. Armstrong World Indus.,*
206 F.R.D. 525 (D. Del. 2002) ...................................................................................... 6

*Mycogen Plant Science v. Monsanto Co.,*
164 F.R.D. 623 (E.D. Pa. 1996) .................................................................................. 11

*Standard Chlorine of Delaware, Inc. v. Sinibaldi,*
821 F. Supp. 232 (D. Del. 1992) ................................................................................... 8

*The Stanley Works v. Newell Co.,*
1992 U.S. Dist. LEXIS 13817 (N.D. Ill. Aug. 27, 1992) ...................................... 10, 11

*Von Drake v. NBC*,
    2004 U.S. Dist. LEXIS 25090 (N.D. Tex. May 20, 2004) ........................................................ 12

*Williams v. City of Dallas*,
    178 F.R.D. 103 (N.D. Tex. 1998) ................................................................................................ 7

*Wiwa v. Royal Dutch Petroleum Co.*,
    392 F.3d 812 (5th Cir. 2004) ...................................................................................................... 6

## INTRODUCTION

Galileo International, Inc. ("Galileo") respectfully submits this memorandum of law in opposition to Northwest Airlines, Inc.'s ("Northwest") Motion to Compel Compliance With Its Subpoena *Duces Tecum*, Docket Item Number ("D.I.") 1, filed August 23, 2005 ("Motion to Compel"), and in support of Galileo's cross motion to quash filed herewith (together, the "Motions"). The Motions relate to a third party subpoena served by Northwest as part of its lawsuit against Sabre Inc. and Sabre Travel International Limited ("Sabre") in the United States District Court for the Northern District of Texas. The subpoena seeks a staggering amount of confidential and proprietary information about virtually every aspect of Galileo's business, including pricing strategies, revenues, operating costs, profits, booking fees, and the terms of Galileo's contracts with its customers. Northwest purportedly seeks these documents to support its asserted antitrust claims against Sabre in the Texas litigation, which are the subject of a pending motion to dismiss.

Northwest's subpoena should be quashed for three reasons. First, the information that Northwest seeks is of such a highly sensitive nature that no confidentiality order can adequately protect Galileo from the threat posed by divulging such information to its customer, Northwest, and its competitor, Sabre. Indeed, this Court would not have jurisdiction to enforce any confidentiality order entered by the district court in Texas, or to remedy any breaches of that order. As a non-party to that litigation, Galileo would have no ability to monitor compliance with the protective order.

Second, the subpoena imposes an enormous burden on Galileo. Compliance would require Galileo to identify, compile, review and produce a staggering amount of documents pertaining to an enormously broad range of topics, spanning a period of more

than five years. The burden on Galileo far outweighs any purported need that Northwest may have for these sensitive and proprietary documents.

Third, the subpoena is premature. Sabre has filed a motion to dismiss Northwest's antitrust claims – to which the requested documents purportedly relate – before the federal district court in Texas. If the court grants Sabre's motion, the information subpoenaed by Northwest would be totally irrelevant to any issue in that case. For these reasons, this Court should quash Northwest's subpoena.

## FACTUAL BACKGROUND

### A. The Texas Litigation

Galileo is not a party to the underlying litigation in *Sabre Inc. and Sabre Travel International Limited v. Northwest Airlines, Inc.*, Case No. No. 4:04-cv-00612, N.D. Tex. Sabre filed its First Amended Complaint in that case on August 27, 2004, alleging that Northwest engaged in a "scheme designed to circumvent its use of the Sabre [global distribution system] and its payment of the [global distribution system] fees" under its contract with Sabre. (First Amended Complaint ¶11).[1] The complaint seeks damages for breach of contract, injunctive relief, and declaratory judgment.

Northwest filed a separate Complaint against Sabre in the United States District Court in Minnesota on August 25, 2004. Thereafter, Northwest moved to stay the Texas litigation or in the alternative to transfer Sabre's lawsuit to Minnesota. While that motion

---

[1] A copy of Sabre's First Amended Complaint is attached hereto as Exhibit A.

- 3 -

was pending in the Texas district court, the Minnesota court transferred Northwest's action to the Northern District of Texas by stipulated order of the parties.[2]

Northwest's complaint alleges generally that Sabre abuses its monopoly power in the airline Computer Reservation System industry and that Sabre charges Northwest exorbitant fees each time a travel agent utilizes Sabre to book a flight. (Northwest's First Amended Complaint ¶2).[3] Among its seven causes of action, Northwest's complaint alleges that Sabre breached its contract with Northwest, engaged in deceptive trade practices, and maintained a monopoly in violation of the Sherman Act. The Sabre and Northwest actions were consolidated into case number 4:04cv612-Y in the Northern District of Texas on December 21, 2004.[4]

Sabre has filed a motion under Fed. R. Civ. P. 12(b)(6) to dismiss Northwest's antitrust claims, asserting that Northwest lacks standing to bring its asserted claims, that Northwest's complaint fails to plead a relevant product market, and that Northwest fails to allege that Sabre's alleged monopoly power was illegally acquired. *See* Exhibit B. The motion is fully briefed and awaits a ruling from the Court.

On July 19, 2005, the court entered a Stipulation and Protective Order Addressing Non-Party Discovery. Northwest and Sabre stipulated to the entry of the protective order, which purports to enable the parties to conduct discovery of third parties by

---

[2] The procedural history is taken from the Brief of Sabre in Support of Motion to Dismiss Northwest's First, Third, Fourth, and Fifth Claims, Case No. 4:04-cv-00612, Jan. 13, 2005, at 5-6, a copy of which is attached hereto as Exhibit B.
[3] A copy of Northwest's First Amended Complaint was filed as Exhibit 1 to Northwest's Memorandum in Support of Its Motion to Compel, D.I. 2 ("Northwest's Opening Mem.").
[4] A copy of the consolidation order is attached hereto as Exhibit C.

restricting the use and dissemination of confidential, proprietary, and commercially sensitive information.[5]

### B.   The Entities Involved

Northwest is the world's fifth largest airline, offering domestic and international travel by providing approximately 1,500 daily departures. (Northwest's Am. Compl. ¶9). Northwest alleges that it relies heavily on travel agents to sell tickets and provide information about airline services to consumers. (*Id.*). Northwest further alleges that travel agents use one of four major computerized reservation systems, now called global distribution systems ("GDS"), to obtain flight and fare information, make bookings, and issue tickets to their customers. *Id.* Sabre is one of the GDS entities. (Exhibit A ¶7).

Galileo operates and maintains one of the other four major GDS's. Travel agencies worldwide use the Galileo GDS to sell and distribute airline travel services and information. Travel agents contract with Galileo to access schedule and fare information, book reservations, and issue tickets for approximately 470 airlines, as well as a number of hotel, car rental, cruise and tour providers. Affidavit of Stephen M. Diffley ¶ 2 ("Diffley Aff.").[6] Airlines and other travel service providers, including Northwest, contract with Galileo to display and sell their travel-related products and services through the Galileo GDS. Diffley Aff. ¶ 2. Substantially all of Galileo's revenue is derived from booking fees paid by airlines. Diffley Aff. ¶ 2. In 2004, approximately 44,000 subscribing travel agents made 256 million bookings through Galileo. Diffley Aff. ¶ 2.

---

[5] A copy of the protective order was filed as Exhibit 10 to Northwest's Opening Mem.
[6] A copy of the Affidavit of Stephen M. Diffley is attached hereto as Exhibit D.

### C.     The Subpoena

Northwest served its subpoena on Galileo on February 23, 2005.[7] Northwest also served a similar subpoena on the other two major GDS entities, Worldspan and Amadeus. Galileo served its written objections to the subpoena on March 16, 2005,[8] and served amended objections on March 30, 2005.[9]

The subpoena seeks documents that purportedly are relevant to Northwest's antitrust claims against Sabre. The subpoena lists 19 categories of requested documents, including participation agreements between Galileo and all of its airline customers, contracts between Galileo and its subscribing travel agents, documents related to Galileo's pricing strategies, and documents related to Galileo's costs and revenues in providing GDS services.

### D.     Northwest's Motion to Compel

Northwest filed its Motion to Compel with this Court on August 23, 2005. Northwest claims that "other third parties" are beginning to produce documents now that a protective order relating to non-party was entered in the Northern District of Texas. Northwest's Opening Memorandum at 12. However, airlines and the two other GDS companies continue to refrain from producing documents in response to the Northwest subpoena. In fact, Northwest has filed similar motions to compel in the Southern District of Florida and the Northern District of Georgia to compel the production of documents from the two other non-party GDS companies.

---

[7] A copy of the Northwest subpoena was filed as Exhibit 2 to Northwest's Opening Mem.
[8] A copy of Galileo's written objections was filed as Exhibit 4 to Northwest's Opening Mem.
[9] A copy of Galileo's amended objections is attached hereto as Exhibit E. Northwest cites no authority for the contention that because Galileo's amended objections were untimely, they should not be addressed in its Motion to Compel. Northwest's Opening Mem. at 6. It is undisputed that Galileo's written objections were timely served on Northwest, and Galileo's amended objections simply amend the timely served objections.

# ARGUMENT

## I. APPLICABLE LEGAL STANDARDS

### A. Quashing a Subpoena on Confidentiality Grounds

Rule 45(c)(3)(B)(i) of the Federal Rules of Civil Procedure provides that if a subpoena "requires disclosure of a trade secret or other confidential research, development, or commercial information . . ." the court may "quash or modify the subpoena." The party objecting to the subpoena must demonstrate that the information sought is a trade secret. *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 292 (D. Del. 1985). Once a showing of a trade secret is made, the party seeking discovery must show that the information sought is relevant and necessary to the action. *Id.* The court "must balance the need for the information against the injury that would ensue if disclosure is ordered." *Id.* at 293. If the potential for injury to the disclosing party is greater than the other party's need for discovery, the court may quash the subpoena. *In re Vitamins Antitrust Litigation*, 267 F. Supp. 2d 738 (S.D. Ohio 2003). While no absolute privilege for confidential information or trade secrets exists, disclosure of such information to a competitor is presumptively more harmful than disclosure to a non-competitor. *Mannington Mills, Inc. v. Armstrong World Indus.*, 206 F.R.D. 525, 531 (D. Del. 2002)

### B. Quashing a Subpoena on Undue Burden Grounds

Rule 45(c)(3)(A)(iv) also provides that a court shall quash or modify a subpoena if it "subjects a person to undue burden." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Konstantopoulos v. Westvaco Corp.*, 1991 U.S. Dist. LEXIS 17760, at *6 (D. Del. Dec. 13, 1991). To determine whether an undue burden exists, the court should consider the party's need for the documents and the nature and importance

of the litigation. *Lindner v. Dep't of Defense,* 133 F.3d 17, 24 (D.C. Cir. 1998). The court also should consider the expense and inconvenience to the third party of compliance with the subpoena. *Williams v. City of Dallas,* 178 F.R.D. 103, 109 (N.D. Tex. 1998). Even if the information is relevant, "discovery is not allowed . . . where compliance is unduly burdensome. . ." *Mannington Mills, Inc.,* 206 F.R.D. at 529. When a subpoena is issued as a discovery device, as is the case here, "relevance for purposes of the undue burden test is measured according to the standard of Rule 26(b)(1)." *Cmedia, LLC v. Lifekey Healthcare, LLC,* 216 F.R.D. 387, 389 (N.D. Tex. 2003); *see also Mannington Mills, Inc.,* 206 F.R.D. at 529 ("the Advisory Committee Notes recognize the intimate relationship between Rules 26 and 45").[10]

### C. Assigning Costs of Compliance

Rule 45(c)(2)(B) mandates that a court "*shall* protect any person who is not a party. . . from significant expense resulting from the inspection and copying commanded." (emphasis added). If the expenses imposed on Galileo are "significant," then "the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.' The rule is susceptible of no other interpretation." *Linder v. Calero-Portocarrero,* 251 F.3d 178, 182 (D.C. Cir. 2001). If a third party is served with a subpoena request, the Court is to "ensure[] that the non-party. . . is 'protected from significant expense' in producing the required documents." *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* 821 F. Supp.

---

[10] Fed. R. Civ. P. 26(b)(1) states, in pertinent part, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. . .. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

232, 265 (D. Del. 1992). The court may determine the amount to be reimbursed in its discovery order or allow the amount to be determined once discovery is complete. *Kisser v. Coalition for Religious Freedom*, 1995 U.S. Dist. LEXIS 14548, at *3 (E.D. Pa. Oct. 4, 1995); *see also In re Letters Rogatory*, 144 F.R.D. 272, 278 (E.D. Pa. 1992).

## II.   ANALYSIS

### A.   Northwest's Subpoena Should Be Quashed Due to the Proprietary Nature of the Requested Documents

The information requested by Northwest is so proprietary and sensitive in nature that no confidentiality protective order can adequately protect Galileo from the threat of harm posed by divulging such information to its customer, Northwest, and its direct competitor, Sabre. The materials sought include all contracts between Galileo and its customer airlines and subscribing travel agents (including any variations in these agreements negotiated with individual airlines and travel agencies), the structure of Galileo's booking fees, Galileo's pricing strategies and practices, costs incurred in providing GDS services, incentives or productivity bonuses paid to travel agencies, and Galileo's analysis of competitive conditions in the marketplace. None of the cases Northwest cites in its Motion to Compel address the issue of a third party divulging proprietary information to a direct competitor and a customer due to a non-party subpoena.

Galileo does not permit this type of information to be disseminated outside the company as a matter of uniform corporate policy. Diffley Aff. ¶ 3. Information about Galileo's pricing, contractual agreements, business strategies, and costs/profits is closely guarded among the Galileo employees who are authorized to have access to such information. Diffley Aff. ¶ 3. All such employees are required to execute confidentiality

agreements prohibiting the use or dissemination of such sensitive proprietary information outside the company. Diffley Aff. ¶ 3.

By keeping its proprietary commercial information confidential, Galileo ensures that no customer or competitor will have the unfair advantage of knowing Galileo's margins and pricing strategies. Galileo Aff. ¶ 4. Galileo's commercial information is of such a confidential nature that revealing this information would cause Galileo to lose its competitive edge in the GDS marketplace and would also cause Galileo to lose its profitability. Diffley Aff. ¶ 4. Maintaining the confidentiality of this information from customers such as Northwest and competing GDS entities such as Sabre is especially important to Galileo's business. Diffley Aff. ¶ 4.

Disclosure of Galileo's pricing and business strategies would not only severely compromise Galileo's future ability to compete in the industry, it would cause Galileo to violate non-disclosure agreements with its airline customers and subscribing travel agents. A non-disclosure clause is placed in each contract, whether with a customer airline or subscribing travel agent, stating that each party to the contract will keep its terms confidential. Diffley Aff. ¶ 5. Galileo's business relationships with its customer airlines would be strained if Galileo turned over these agreements or other documents discussing those airlines' methods and costs of selling and distributing tickets, as called for by the subpoena. Diffley Aff. ¶ 5.

Other courts have granted motions to quash when the third party demonstrated that the potential harm in producing the proprietary documents was greater than the other party's need for discovery. *See, e.g., Litton Indus., Inc. v. Chesapeake & Ohio Ry Co.*, 129 F.R.D. 528, 530 (E.D. Wis. 1990). In *Litton*, the court partially quashed two

subpoenas that sought production of documents relating to cost and profit information from non parties. *Id.* The court rejected the notion that a protective order would adequately protect the movants' interests, concluding that it was "not sanguine that a protective order could be constructed to sufficiently maintain the confidential nature" of the information sought. *Id.* at 531. The court also emphasized that the third parties had a right to privacy in their financial affairs. *Id.* at 530.

Similarly, the court *In re Vitamins Antitrust Litigation* granted a third party's motion to quash a subpoena that would have resulted in disclosure of its trade secrets to direct competitors. *In re Vitamins Antitrust Litigation*, 267 F. Supp. 2d 738 (S.D. Ohio 2003). In that case, the court recognized that such trade secrets were "the lifeblood" of the movant's business. *Id.* at 741-42. Further, the court noted that it would have no power to enforce the protective order in the underlying litigation. These considerations, combined with the fact that a motion to dismiss was pending in the underlying litigation, convinced the court to quash the subpoena. *Id.* at 742.

The circumstances here are substantially similar to those presented in *Litton* and *Vitamins*. The documents that Northwest seeks include Galileo's most sensitive cost, pricing, and strategic commercial information – the lifeblood of its business in the competitive GDS industry. No protective order can sufficiently maintain the confidentiality of this information, particularly considering that the information will be turned over to one of its customers, Northwest, and its direct competitor, Sabre. *See, e.g.*, *The Stanley Works v. Newell Co.*, 1992 U.S. Dist. LEXIS 13817, at *15 (N.D. Ill. Aug. 27, 1992) (court declined to compel production of confidential sales records, reasoning that dissemination of such information "could be devastating" to movant's business).

This Court would have no power to enforce any protective order in the underlying litigation, or to remedy any breaches of that order. *Id.*; *Litton Indus., Inc.*, 129 F.R.D. at 530 ("[t]here is a constant danger inherent in disclosure of confidential information pursuant to a protective order."). Furthermore, as a non-party to the Texas litigation, Galileo would have no ability to ensure or monitor compliance with any protective order--a particularly important problem considering that the documents will be in the hands of Galileo's competitor and customer. For these reasons, this Court should decline to allow discovery of Galileo's proprietary information. *See, e.g., Mycogen Plant Science v. Monsanto Co.*, 164 F.R.D. 623, 628 (E.D. Pa. 1996) (holding that the court "bear[s] a special responsibility to alleviate the risk that the subpoenas present to the nonparty").

      **B.**    **The Subpoena Should Be Quashed on Undue Burden Grounds**

The Court also should quash the subpoena because of the undue burden it imposes on Galileo. The expansive and unreasonably broad nature of Northwest's subpoena is apparent on its face. Request No. 2, for example, seeks all documents relating to Galileo's "negotiation" of "participation agreements" with any airline. Request No. 5 seeks all documents relating to "communications between [Galileo] and any other person concerning Northwest's Shared GDS Fee initiative." And Request No. 11 seeks all documents that "refer or relate to [Galileo's] pricing strategies or practices."

Even to *identify* the individuals within Galileo's global operations who are likely to have responsive documents would be a daunting challenge. Diffley Aff. ¶ 6. The requests are so broad that dozens – if not hundreds – of employees are likely to have at least some responsive documents. Reviewing their files and computers to compile the documents would require an enormous amount of manpower. Diffley Aff. ¶ 6. Additionally, because of the expansive time period covered by the subpoena, Galileo

would be required to search through archived records at numerous locations around the globe. Dozens of Galileo employees will be diverted from their duties to participate in the search for responsive documents, and dozens more will be disrupted by having their files and computers searched. Diffley Aff. ¶ 6. Furthermore, because the subpoena requests sensitive documents relating to "negotiations" and "potential actions" in response to Northwest's GDS initiative, as well as documents relating to "travel agent liability," Galileo would have to undertake a thorough privilege review before producing the documents. *See, e.g., Williams*, 178 F.R.D. at 113 (court considered attorney fees required to "give careful scrutiny" to privilege issues).

In comparison, Northwest has little need for the documents in question, particularly considering Sabre's pending motion to dismiss Northwest's asserted antitrust claims. In this situation, the Court should be guided by the factors applied when considering a motion to stay discovery under Fed. R. Civ. 26(c). *Von Drake v. NBC*, 2004 U.S. Dist. LEXIS 25090, at *3 (N.D. Tex. May 20, 2004). A court has discretion to stay discovery "for good cause shown," and may consider the breadth of discovery sought, the burden of responding to such discovery; and the strength of the dispositive motion filed by the party seeking a stay. *Id.*; *see also Johnson v. N. Y. Univ. Sch. of Educ.*, 205 F.R.D. 433 (S.D.N.Y. 2002) ("a stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion appear[s] to have substantial grounds or, stated another way, do[es] not appear to be without foundation in law.") (internal quotations omitted); *In re Vitamins Antitrust Litigation*, 267 F. Supp. 2d 738, 742 (S.D. Ohio 2003) (in granting motion to quash, court considered pending motion to dismiss as a factor).

A review of Sabre's motion to dismiss demonstrates a thorough and persuasive argument for the dismissal of Northwest's antitrust claims. Sabre seeks dismissal of those claims on the ground that Northwest lacks standing to assert its antitrust claims; that Northwest's complaint fails to plead a relevant product market; that Northwest fails to allege that Sabre's alleged monopoly power was illegally acquired; that there is no causal connection between the alleged harm to Northwest and Sabre's alleged conduct constituting the antitrust violation; and that Sabre's alleged monopoly power was illegally acquired. (*See generally* Exhibit B).

In its Motion to Compel, Northwest attempts to illustrate how its document requests relate to its antitrust claims. These requests are not at issue, however, because of the pendency of Sabre's motion to dismiss. Northwest obviously has no need for the discovery it seeks unless and until the Texas court permits its antitrust claims to go forward. Even then, only a small portion of the requested documents would be conceivably relevant to Northwest's antitrust claims. The rest of the documents that Northwest seeks – perhaps the majority – go far beyond the limited number of legitimate antitrust issues likely to remain after the Texas court's ruling if any. Northwest should be made to await the court's ruling so that its need for documents can be clearly defined in light of the issues as they exist in the case at that time.

### C.   This Court Should Protect Galileo From the Significant Cost of Compliance With the Subpoena

If the Court does not quash the subpoena, Galileo must be protected from the significant expenses associated with compliance. While it is impossible to accurately estimate these costs in advance, the breadth of document requests ensures that the undertaking will be a daunting endeavor, as discussed above. Furthermore, Rule 45

specifically allows the court to order the party issuing the subpoena to pay the costs of compliance *in advance*, or alternatively to require that some costs to be paid immediately and the rest paid after discovery is complete. *Kisser*, 1995 U.S. Dist. LEXIS 14548, at *3; *see also In re Letters Rogatory*, 144 F.R.D. at 278. Galileo proposes that if this Court does not quash Northwest's subpoena, the Court should order Northwest to pay the expected costs of compliance in advance, or at a minimum that Northwest shall pay Galileo's costs as incurred on a weekly basis. *See* Fed. R. Civ. P. Rule 45 (1991 advisory committee's note) ("The court is not required to fix the costs in advance of production, although this will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs. In some instances, it may be preferable to leave uncertain costs to be determined after the materials have been produced, provided that the risk of uncertainty is fully disclosed to the discovering party.").

## CONCLUSION

For the foregoing reasons, Galileo respectfully requests that this Court deny Northwest's Motion to Compel, grant Galileo's Motion to Quash Document Subpoena, award Galileo its reasonable expenses, including attorneys' fees, incurred in connection with the Motions, and award such other relief as the Court deems proper.

Dated: September 7, 2005

Respectfully submitted,

PRICKETT, JONES & ELLIOTT, P.A..

By: _____
James L. Holzman (Bar ID #663)
J. Clayton Athey (Bar ID #4378)
Prickett, Jones & Elliott, P.A.
1310 King Street
Wilmington, DE 19899
Telephone: (302) 888-6500
Fax: (302) 658-8111
jlholzman@prickett.com
jcathey@prickett.com

Of Counsel:

Steven P. Handler
David F. Wentzel
Mark J. Altschul
McDermott, Will & Emery LLP
227 W. Monroe
Chicago, IL 60606
Telephone: (312) 372-2000
Fax: (312) 984-7700

**Attorneys for
Galileo International, Inc.**

CHI99 4521965-1.069834.0012

## CERTIFICATE OF SERVICE

I, J. Clayton Athey, hereby certify that on this 7th day of September, 2005, I electronically filed **Galileo International Inc.'s Memorandum in Opposition to Northwest Airlines, Inc.'s Motion to Compel and in Support of Cross Motion to Quash** with the Clerk of the Court using CM/ECF, which is available for viewing and downloading, and which will send notification of such filing to the following counsel of record:

> Lewis H. Lazarus, Esquire -#2374
> Mary B. Matterer, Esquire - #2696
> Morris, James, Hitchens & Williams LLP
> 222 Delaware Avenue, 10th Floor
> Wilmington, DE 19899
> llazarus@morrisjames.com
> mmatterer@morrisjames.com

I further certify that on September 7, 2005, I have mailed by Federal Express **Galileo International Inc.'s Memorandum in Opposition to Northwest Airlines, Inc.'s Motion to Compel and in Support of Cross Motion to Quash** to the following non-registered participants:

| | |
|---|---|
| James P. Denvir, Esquire | Roderick M. Thompson, Esquire |
| Amy J. Mauser, Esquire | Farella Braun & Martel LLP |
| Boies, Schiller & Flexner LLP | 235 Montgomery Street, 30th Floor |
| 5301 Wisconsin Avenue, N.W. | San Francisco, CA 94104 |
| Washington, D.C. 20015 | Telephone 415-954-4400 |
| Telephone 202-237-2727 | |

PRICKETT, JONES & ELLIOTT, P.A.

By: /s/ James L. Holzman
James L. Holzman (Bar ID #663)
J. Clayton Athey (Bar ID #4378)
1310 King Street
P.O. Box 1328
Wilmington, Delaware 19899-1328
Telephone: (302) 888-6500
Fax: (302) 658-8111
jlholzman@prickett.com
jcathey@prickett.com
**Attorneys for
Galileo International, Inc.**