UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SABRE, INC., et al., | ) | Case Pending in the Northern District of Texas, Fort Worth Division, Civil No. 4:04-CV-612-Y, |
| v. | ) | Consolidated with 4:04-CV-907-Y (ECF) |
| NORTHWEST AIRLINES, INC. | ) | Misc. No. 05-MC-00166 (SLR) |

**NORTHWEST AIRLINES, INC.'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO COMPEL COMPLIANCE WITH ITS
SUBPOENA *DUCES TECUM* TO GALILEO INTERNATIONAL, LLC AND
OPPOSITION TO GALILEO INTERNATIONAL, LLC'S MOTION TO QUASH**

Of Counsel:

James P. Denvir
Amy J. Mauser
Jonathan M. Shaw
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Telephone: (202) 237-2727

Parker C. Folse, III
1201 Third Avenue, Suite 3100
SUSMAN GODFREY LLP
Seattle, WA 98101
Telephone: (206) 516-3860

Thomas Tinkham
Theresa M. Bevilacqua
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

DATED:   September 14, 2005

MORRIS, JAMES, HITCHENS
  & WILLIAMS LLP
Lewis H. Lazarus (#2374)
Mary B. Matterer (#2696)
Amy A. Quinlan (#3021)
222 Delaware Avenue, 10th Floor
Wilmington, DE  19899
Telephone:  (302) 888-6800
aquinlan@morrisjames.com

**Attorneys for
Northwest Airlines, Inc.**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    ARGUMENT .............................................................................................................3

       A.     Galileo Has Not Presented Competent Evidence That Disclosure Of The
              Requested Information Pursuant To The Stringent Protective Order In The
              Underlying Litigation Would Cause It Harm .........................................................3

       B.     Even If Galileo Had Established The Likelihood Of Harm, The Information Is
              Relevant And Northwest's Need For The Information Outweighs The Harm That
              Is Likely To Arise From Disclosure Pursuant To The Protective Order .................7

       C.     Galileo Overstates The Burden Associated With Compliance .............................12

       D.     If Galileo Incurs Significant Costs In Complying With The Subpoena, Northwest
              Agrees To Pay The Share Required By Fed. Rule Civ. P. 45................................13

III.   CONCLUSION.........................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Cash Today of Texas, Inc. v. Greenberg*, 2002 U.S. Dist. LEXIS 20694
(D. Del. Oct. 23, 2002) ...................................................................................1, 2, 3, 7

*Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288
(D. Del. 1985) .................................................................................................3, 4, 7, 8

*Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enterprises, Inc.*,
160 F.R.D. 70 (E.D. Pa. 1995)......................................................................................1, 4

*Covia Partnership v. River Parish Travel Center, Inc.*, 1991 WL 264549
(E.D. La. Dec. 4, 1991) ..................................................................................................6

*Federal Open Market Committee v. Merrill*, 443 U.S. 340 (1979) ................................................8

*In re Air Passenger Computer Reservations Systems Antitrust Litig.*, 694 F. Supp. 1443 (C.D.
Cal. 1988)......................................................................................................................9

*In re Letters Rogatory Issued by Nat'l Court of First Instance in Commercial Matters*, 144
F.R.D. 272 (E.D. Pa. 1992)........................................................................................8

*In re Litton Indus., Inc. v. Chesapeake & Ohio Railway Co.*, 129 F.R.D. 528
(E.D. Wis. 1990) ...........................................................................................................12

*In re Vitamins Antitrust Litig.*, 267 F. Supp. 2d 738 (S.D. Ohio 2003)........................................12

*Linder v. National Security Agency*, 94 F.3d 693 (D.C. Cir. 1996)................................................1

*Linder v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001)....................................................14

*Medtronic Ave., Inc. v. Advanced Cardiovascular Systems, Inc.*, 2004 U.S. Dist. LEXIS 670
(D. Del. Jan. 13, 2004)...........................................................................................4, 5, 7

*Mycogen Plant Service, Inc. v. Monsanto Co.*, 164 F.R.D. 623 (E.D. Pa. 1996) ...........................8

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) ......................................................4

*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1994)......................................................4

*Stanley Works v. Newell Co.*, 1992 U.S. Dist. LEXIS 13817 (N.D. Ill. Aug. 27, 1992) ...............12

*Tiberi v. Cigna Ins. Co.*, 40 F.3d 110 (5th Cir. 1994)........................................................1

*United States v. International Business Machines Corp.*, 81 F.R.D. 628 (S.D.N.Y. 1979) ........1, 4

*Williams v. City of Dallas*, 178 F.R.D. 103 (N.D. Tex. 1998) ..........................................1

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003)..............................................13

## OTHER

*Final Rule, Computer Reservation Systems (CRS) Regulations*, 69 Fed. Reg. 976
   (Jan. 7, 2004)..................................................................................................................9

I.    **INTRODUCTION**

Galileo has not only opposed Northwest's motion to compel, it has also moved to quash

Northwest's subpoena.  "[T]he party moving to quash 'must show, with specificity, that

disclosure will work a clearly defined and serious injury to the moving party.'"  *Cash Today of*

*Texas, Inc. v.* Greenberg, 2002 U.S. Dist. LEXIS 20694, *11 (D. Del. Oct. 23, 2002) (quoting

*Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enterprises, Inc.*,

160 F.R.D. 70, 72 (E.D. Pa. 1995)).  As a general rule, "[m]odification of a subpoena is

preferable, however, to quashing it." *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex.

1998) (citing *Tiberi v. Cigna Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994)); *see also Linder v.*

*National Security Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996).  Galileo has failed to meet its

burden.

*First*, Galileo argues that the information sought is confidential, and that disclosure to a

competitor or customer will harm it.  To support such an argument, the case law requires Galileo

to present competent evidence of potential harm arising from disclosure of the material *taking*

*into account the protective order in effect in the case.*  But the affidavit that Galileo relies on

does not even mention the protective order limiting disclosure to outside counsel, independent

experts, and the court.  There is thus no evidence in the record going to the legally relevant

question:  Would disclosure of the materials harm Galileo *taking into account the protective*

*order?*  The record establishes no likelihood of harm to Galileo because absent disclosures to

customers or competitors – of the sort explicitly precluded by the protective order – there is no

real prospect of such harm.

*Second,* even if Galileo had come forward with competent evidence of potential harm

arising from disclosure, which it has not, the information is relevant.  Galileo does not dispute

any of Northwest's explanations of how the requested information is relevant.  Instead, it argues

that it may become irrelevant if Sabre's pending motion to dismiss is granted.  Galileo's

speculations about the outcome of that motion are grounded more in wishful thinking than in

analysis of the legal issues presented.  Indeed, although Galileo has provided this Court a copy of

the brief that Sabre filed in support of its motion, it chose not to provide Northwest's opposition

brief that explains why Sabre's motion should not be granted.  For example, Northwest's

opposition demonstrates that the same market definitions that Sabre's motion asserts are

inadequate as a matter of law have, in fact, been previously been endorsed by a federal district

court, the United States Department of Justice, and the United States Department of

Transportation.  When Northwest's need for the requested information is balanced against the

potential harm likely to arise from disclosure pursuant to the protective order, the balance tips

decidedly in favor of disclosure.  "Indeed, 'discovery is virtually always ordered once the

movant has established that the secret information is relevant and necessary.'"  *Cash Today of

Texas, Inc.*, 2002 U.S. Dist. LEXIS 20694, *8 (citation omitted).

     *Third,* Galileo overstates the burden associated with compliance.  It conjures up a search

that is far removed from what would be required in the real world, including backup tapes and

other archived data and offices all over the world.  Northwest has repeatedly offered to discuss

ways the search could be narrowed to particular key players or departments, but Galileo has

refused even to discuss the matter.  Simply put, the parade of horribles that Galileo trots out in

support of its burden argument bears no relationship to what would actually be required by the

subpoena.

     *Fourth*, Galileo's argument that the subpoena is premature has been overtaken by events.

Northwest deferred moving to compel for close to six months in deference to Galileo's request

that the subpoena be deferred while the motion to dismiss was pending, but now – with less than three months before the close of all discovery in the underlying litigation – Northwest can no longer wait to get the requested information. There has been no stay of antitrust discovery in the underlying litigation, and the parties have been conducting full-blown discovery on Northwest's antitrust claim for the past six months. To defer Galileo's production any further would be to deny Northwest information it needs to prove its claim, and to respond to Sabre's contentions.

Thus, Northwest's motion to compel should be granted, and Galileo's motion to quash should be denied.

II.    **ARGUMENT**

     A.    **Galileo Has Not Presented Competent Evidence That Disclosure Of The Requested Information Pursuant To The Stringent Protective Order In The Underlying Litigation Would Cause It Harm.**

Galileo's primary argument, in opposing the production of documents in response to Northwest's subpoena, is that "[t]he information requested by Northwest is so proprietary and sensitive in nature that no confidentiality protective order can adequately protect Galileo from the threat of harm posed by divulging such information to its customer, Northwest, and its direct competitor, Sabre." (Galileo Br. at 8). Galileo makes this argument in a conclusory fashion, without applying the specific framework that courts apply for examining whether sensitive, proprietary information must be produced.

As a preliminary matter, "[t]o avoid discovery of a trade secret, [Galileo] must demonstrate by competent evidence that the information sought is a trade secret and that disclosure of the secret might be harmful." *Cash Today of Texas, Inc.*, 2002 U.S. Dist. LEXIS 20694, *6. "In determining if disclosure is harmful, the court must consider 'not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order.'" *Id.* (quoting *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-*

3

*Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985)); *see also Medtronic Ave., Inc. v. Advanced Cardiovascular Systems, Inc.*, 2004 U.S. Dist. LEXIS 670 (D. Del. Jan. 13, 2004) (same). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test.'" *Id.* at *7 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). Galileo must "'articulate the injury with specificity.'" *Medtronic, Ave., Inc.*, 2004 U.S. Dist. LEXIS 670, *7 (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)); *see also Cash Today of Texas, Inc.*, 2002 U.S. Dist. LEXIS 20694, *11 ("[T]he party moving to quash 'must show, with specificity that disclosure will work a clearly defined and serious injury to the moving party.'") (quoting *Composition Roofers Union Local 30 Welfare Trust Fund*, 160 F.R.D. at 72); *United States v. International Business Machines Corp.*, 81 F.R.D. 628, 630 (S.D.N.Y. 1979) (claim that information was "confidential and sensitive" and that disclosure would cause "severe and irreparable injury" was insufficient).

The only evidence of harm that Galileo has offered is the affidavit of Stephen M. Diffley, the Group President, Supplier Services for Cendant Travel Distribution Services Group, Inc., in which he states that:

- "By keeping its proprietary commercial information confidential, Galileo ensures that no customer or competitor will have the unfair advantage of knowing Galileo's margins and pricing strategies. Galileo's commercial information is of such a confidential nature that revealing this information would cause Galileo to lose its competitive edge in the GDS marketplace and would cause Galileo to lose its profitability. Maintaining the confidentiality of this information from customers such as Northwest and competing GDS entities such as Sabre is especially important to Galileo's business, particularly in view of Sabre's leading position in the GDS business." (Diffley Aff. ¶ 4).

- "Disclosure of Galileo's pricing and business strategies would not only severely compromise Galileo's ability to compete in the industry, it would cause Galileo to violate non-disclosure agreements with its airline customers and subscribing travel agents." (*Id.* ¶ 5).[1]

---

[1]     Galileo also asserts that it "does not permit this type of information to be disseminated outside the company as a matter of uniform corporate policy." (Galileo Br. at 8). The Coca-Cola Company made a

This affidavit fails to satisfy the Rule 26(c) test for harm because it contains nothing more than broad assertions of harm, unsubstantiated by specific examples or articulated reasoning, and it does not take into account the protective order in effect in the underlying litigation. The affidavit does not even acknowledge the protective order.

While Mr. Diffley asserts that disclosure of Galileo's confidential information to a customer such as Northwest or a competitor such as Sabre would cause Galileo harm, the protective order entered in the underlying litigation would allow Galileo, as a non-party, to designate its confidential information "Restricted Access," which would mean that no businessperson or in-house lawyer at Northwest or Sabre could review or have access to such information; only outside counsel, independent experts, and the court could have access. Thus, no customer or competitor will have access to the information. With such a protective order in place, Galileo's confidentiality interests are fully protected. *See Medtronic, Ave., Inc.,* 2004 U.S. Dist. LEXIS 670, *8-9 ("While the court has previously recognized that disclosure to a competitor is likely more harmful than disclosure to a noncompetitor, disclosure to limited persons as in the instant case is not the same as disclosure to Medtronic personnel. The court, therefore, concludes that Medtronic's interests will not be in jeopardy by providing the redacted information to Medtronic's legal counsel and independent experts.").

Tellingly, Galileo never explains how its interests will be jeopardized, if the disclosure of its information is subject to the protective order in effect, other than to state that "[t]his Court would have no power to enforce any protective order in the underlying litigation, or to remedy

---

similar argument to resist the disclosure of the complete formula and secret ingredients for Coke, Diet Coke, and other soft drinks in *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288 (D. Del. 1985), cited by Galileo. The court granted the plaintiffs' motion to compel the disclosure of the formula: "Except for a few privileged matters, nothing is sacred in civil litigation; even the legendary barriers erected by The Coca-Cola Company to keep its formulae from the world must fall if the formulae are needed to allow plaintiffs and the Court to determine the truth in these disputes." *Id.* at 290.

any breaches of that order." (Galileo Br. at 11). To the extent this Court believes that Judge

Means, the judge presiding over the underlying litigation, will not be able to adequately protect

Galileo's interests, Northwest's outside counsel and its independent experts would agree to

subject themselves to the jurisdiction of this Court for any proceeding relating to their alleged

breach of the protective order.[2]

       Galileo's invocation of the confidentiality provisions in its agreements with other airlines

and travel agents also does not satisfy the requirement that Galileo present competent evidence

of the harm that would result from disclosure of the information requested in Northwest's

subpoena. Significantly, Galileo presents no evidence that it has notified the other airlines or

travel agents that it has received a subpoena that seeks information relating to Galileo's

contractual relationships with them, or that it has tried to obtain their consent. At least with

respect to Galileo's contracts with other airlines, it is Galileo – not the airlines – that has

prevented the discovery of documents relating to such contractual relationships. Northwest has

served documents subpoenas on a number of airlines that seek, *inter alia*, information relating to

their contractual relationships with Galileo and other GDSs. The subpoenaed airlines gave

Galileo and the other GDSs notice of their intent to produce the requested information, but the

GDSs objected. Because the airlines are concerned that the GDSs will retaliate against them for

producing such information, without their consent, they prefer to await a court order giving them

guidance on how to proceed. *See, e.g.,* September 11, 2005 e-mail from Scott McLain to Amy

Mauser (Exhibit 1); Excerpt from August 19th letter from Kevin Baumgardner to Daniel Low

(Exhibit 2). Even more important, however, "[p]arties may not foreclose discovery by

---

[2]     Northwest has not conferred with Sabre's outside counsel concerning whether they, and Sabre's independent experts, would likewise agree to submit themselves to the jurisdiction of this Court for any proceeding relating to any alleged breach of the protective order. To the extent this Court concludes that such a requirement is necessary to give Galileo adequate protection, it can condition the access of Sabre's outside counsel and independent experts to the information on their agreeing to this requirement.

contracting privately for the confidentiality of documents." *Covia Partnership v. River Parish Travel Center, Inc.*, 1991 WL 264549, *1 (E.D. La. Dec. 4, 1991).

Galileo's failure to come forward with competent evidence that production of the requested information, pursuant to the protective order in the underlying litigation, would cause it injury is dispositive, and this Court need not engage in further inquiry.

**B.      Even If Galileo Had Established The Likelihood of Harm, The Information Is Relevant and Northwest's Need for the Information Outweighs The Harm That Is Likely To Arise From Disclosure Pursuant To The Protective Order.**

Assuming that Galileo had come forward with competent evidence that disclosure of the requested information, pursuant to the protective order, would cause it injury, it would then be Northwest's burden "to establish that disclosure of the trade secret is relevant and necessary to the litigation." *Cash Today of Texas, Inc.*, 2002 U.S. Dist. LEXIS 20694 at *7.   "Rule 26 allows for discovery of 'any matter, not privileged, that is relevant to the claim or defense of any party.' Fed. R. Civ. P. 26(b)(1).  Relevance for discovery purposes is given very broad meaning." *Id.* at *4.  "Disclosure of the evidence is considered necessary when the information is required 'for the movant to prepare its case for trial, which includes proving its theories and rebutting its opponent's theories.'" *Id.* at *8 (quoting *Coca-Cola Bottling Co.*, 107 F.R.D. at 293).

"If relevancy and need have been established, the court must balance the need for the information with the harm that would be caused if disclosure is ordered." *Cash Today of Texas, Inc.*, 2002 U.S. Dist. LEXIS 20694 at *8.  "Because protective orders are available to limit the extent to which disclosure is made, the relevant injury to be weighed in the balance is not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order." *Coca-Cola Bottling Co. of Shreveport, Inc.*, 107 F.R.D. at 293; *see also Medtronic*, 2004 U.S. Dist. LEXIS 670, *7.  "This balance typically tilts in favor of disclosure." *Id.* at * 8.  "Indeed, 'discovery is virtually always ordered once the movant has

7

established that the secret information is relevant and necessary.'" *Cash Today of Texas, Inc.*,
2002 U.S. Dist. LEXIS 20694, *8 (citation omitted).  As the Supreme Court has stated: "orders
forbidding any disclosure of trade secrets or confidential commercial information are rare.  Most
commonly, the trial court will enter a protective order restricting disclosure to counsel [citation
omitted], or to the parties." *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362 n.24
(1979).[3]

   In its opening brief, Northwest explained in detail how each of its requests seeks relevant
information.  *See* Northwest's Opening Br. at 15-18.  In response, Galileo does not dispute the
explanation provided by Northwest and, therefore, concedes the relevancy of the requested
information to Northwest's antitrust and false advertising claims.  Instead, Galileo argues that the
antitrust claims "are not at issue . . . because of the pendency of Sabre's motion to dismiss," and
"[a] review of Sabre's motion to dismiss demonstrates a thorough and persuasive argument for
the dismissal of Northwest's claims." (Galileo Br. at 13).[4]  Discovery has not been stayed on
Northwest's antitrust claims in the underlying litigation; the parties have been conducting

---

[3]     Even cases cited by Galileo emphasize that the presumption is in favor of disclosure.  *See, e.g.,
Mycogen Plant Science, Inc. v. Monsanto Co.*, 164 F.R.D. 623, 626, n.7 (E.D. Pa. 1996) ("Balancing is
the wrong word to describe our task.  In a thorough survey of relevant caselaw, one court has found that
'discovery is virtually always ordered' and has therefore concluded that the balancing test 'is tilted in
favor of disclosure.'") (quoting *Coca-Cola Bottling Co. of Shreveport*, 107 F.R.D. at 292-93, also cited by
Galileo); *In re Letters Rogatory Issued by Nat'l Court of First Instance in Commercial Matters*, 144
F.R.D. 272, 276 (E.D. Pa. 1992) ("The Federal Rules of Civil Procedure show a strong preference for
broad discovery.").

[4]     Galileo also argues that "the subpoena is premature," based on the pending motion to dismiss.
(Galileo Br. at 2).  In an attempt to accommodate Galileo's professed concerns, Northwest served its
subpoena on Galileo in February 2005, but waited until August 2005 to move to compel compliance with
it.  The motion to dismiss has been fully briefed since March.  Northwest does not know when Judge
Means will decide it.  But Northwest is subject to Judge Means' order setting a December discovery cut-
off in this case.  If Northwest has any chance of obtaining the discovery that it needs to support its case,
and to refute Sabre's contentions, it cannot wait any longer.  All discovery in the underlying case must be
concluded by December 30, 2005 – less than three months away.  Given the looming discovery cut-off,
neither the subpoena nor this motion can fairly be characterized as premature.

extensive discovery on those claims, and the case management order requires the parties to complete all discovery by December 30, 2005, and to file all dispositive motions by January 31, 2006. Thus, the antitrust claims are at issue in the underlying litigation. To defer Galileo's production of the requested information any longer would be to deny Northwest access to the information.

Galileo also substantially overstates the strength of Sabre's motion to dismiss. For example, Sabre has moved to dismiss Northwest's antitrust claim contending that as a matter of law, Northwest failed to allege a relevant market. While Galileo has provided the Court Sabre's motion making this argument, it chose not to provide Northwest's opposition to the motion. The reason it made that choice is obvious. In its opposition, Northwest explains that the United States Department of Justice, the United States Department of Transportation, and a federal district court have each already concluded that the very market alleged by Northwest – "the provision of computerized air passenger transportation flight and fare information and booking capability . . . to travel agent subscribers of the Sabre GDS" (FAC ¶ 56) – constitutes a relevant market:[5]

- *Another District Court:* "The evidence, interpreted in the light most favorable to plaintiff, could permit a reasonable jury to establish that SABRE is a separate service market because there is evidence that airlines view each CRS [another term for GDS] as offering a unique service: access to a particular set of travel agents." (*In re Air Passenger Computer Reservations Systems Antitrust Litig.*, 694 F. Supp. 1443, 1460 (C.D. Cal. 1988), aff'd 948 F.2d 536 (9th Cir. 1991).

- *DOT:* "Sabre has failed to show that the relevant market is not each system, but the broader market of providing travel agent information to consumers, or airline ticket distribution, a market in which each system's share would be relatively small. . . . . Each system is a separate market insofar as airlines are concerned." (Final Rule, Computer Reservation Systems (CRS) Regulations, 69 Fed. Reg. 976, 988 (Jan. 7, 2004).

---

[5]     A copy of Northwest's opposition brief is attached hereto as Exhibit 3.

- *DOJ*: "Each CRS provides access to a large, discrete group of travel agents, and unless a carrier is willing to forego access to those travel agents, it must participate in every CRS. Thus, from an airline's perspective, each CRS constitutes a separate market and each system possesses market power over any carrier that wants travel agents subscribing to that CRS to sell its airline tickets." (*Id.* at 987).

In addition, as Northwest's opposition brief explains, after a multi-year, on the record, rulemaking proceeding, DOT concluded that the four major GDSs have monopoly power, and have abused that power:

- "We find that the systems continue to have market power over airlines, as argued by the Justice Department . . . and that systems could engage in practices that could unreasonably preserve their market power." (*Id.* at 986).

- "When we last compared the systems' prices with their costs, we concluded that the larger systems at least were charging supracompetitive prices. [citation omitted] We have not done such an analysis since then, as we noted in our notice, but stated our belief that the systems' booking fees were probably above competitive levels, because they were not disciplined by market force." (*Id.*)

- "The airline commenters generally support our finding that booking fees are not disciplined by competition and contend that the fees substantially exceed competitive levels." (*Id.*)

- "We continue to believe that the systems' fees exceed competitive levels for the reasons set forth in the notice of proposed rulemaking." (*Id.*)

Not only is the requested information relevant, it is necessary to prove Northwest's claims and Sabre's theories in response:

- Notwithstanding the findings by a district court, the Department of Justice, and the Department of Transportation concerning the relevant market, Sabre is challenging Northwest's definition of the relevant market. Documents relating to Galileo's contractual relationships with other airlines are necessary to show that GDSs do not constrain each other's market power over the prices each charges to airlines and that GDSs do not compete with one another. These contracts may also be necessary to establish causation and damage, to the extent they contain provisions restricting the

10

ability of airlines to take actions that would introduce competitive pressure on booking fees.

- Documents relating to Northwest's shared GDS fee, or shared fees in general, go to the heart of what the underlying case is about. To the extent Galileo communicated with other airlines and/or GDSs in response to Northwest's Shared GDS fee, or otherwise discouraged or prevented any other airline from implementing a similar shared fee, those communications constitute essential evidence of GDS market power and the efforts of GDSs to prevent the development of competitive alternatives to GDSs.

- Information concerning Galileo's contractual relationships with travel agents, and its payments to travel agents, is necessary to prove Northwest's allegation that GDSs like Galileo have used contract provisions and payments to prevent airlines from bypassing GDSs and establishing less costly competitive alternatives, and to rebut Sabre's contention that competition among GDSs is robust.

- Northwest's requests relating to competition in the provision of airline flight and fare information and booking capability to travel agents, and alternative technologies to GDSs for locating fare and flight information and booking capability, are necessary to rebut Sabre's contention that there are effective competitive substitutes to GDSs.

- Evidence that Galileo has made plans for the use of display bias is necessary to establish that each GDS possesses market power and does not constrain each other's use of that power.

Because the requested information is both relevant and necessary, and because Galileo has failed to explain how disclosure to only outside counsel, independent experts, and the Court

11

will cause it injury, the balance tips decidedly in favor of disclosure, and Galileo should be required to produce responsive documents.[6]

### C.     Galileo Overstates the Burden Associated With Compliance.

Galileo argues that "[t]he Court should also quash the subpoena because of the undue burden it imposes on Galileo." (Galileo Br. at 11). To support its burden argument, Galileo relies on the affidavit of Mr. Diffley in which he describes a fantastically broad search that bears little resemblance to real world discovery:

> Identifying the individuals within Galileo's global operations likely to have documents responsive to the Northwest subpoena would be a daunting challenge. Because of the broad range of the document requests, dozens if not hundreds of employees around the world potentially would have responsive documents. A search would have to be made of these employees' active and archived files, as well as their work computers and laptops. . . . . Additionally, Galileo IT personnel would have to identify backup tapes and other electronic storage media that potentially contains responsive material, and spend countless hours reviewing such electronic media for relevant files.

(Diffley Aff. ¶ 6). Mr. Diffley describes a search that is more extensive than what is generally performed by parties in a litigation. The duty to preserve is generally broader than the duty to produce, and even parties to a litigation are not expected to preserve "every shred of paper, every e-mail or electronic documents, and every backup tape" – much less search them. *Zubulake v.*

---

[6]     Galileo asserts that "[o]ther courts have granted motions to quash where the third party demonstrated that the potential harm in producing the proprietary documents was greater than the other party's need for discovery." (Galileo Br. at 9). Each of the cases that Galileo cites for this proposition is distinguishable. In *In re: Vitamins Antitrust Litig.*, 267 F. Supp. 2d 738 (S.D. Ohio 2003), the court did not rule on the merits of the subpoena. *Id.* at 742-43. In *Litton Indus., Inc. v. Chesapeake & Ohio Railway Co.*, 129 F.R.D. 528 (E.D. Wis. 1990), the subpoenaed party agreed to produce some responsive documents. And, in *Stanley Works v. Newell Co.*, 1992 U.S. Dist. LEXIS 13817 (N.D. Ill. Aug. 27, 1992), the requesting party put forth only a bare assertion that the documents were relevant, without explaining how, and the protective order in the underlying litigation permitted officers, directors, and employees of the parties to review documents designated "confidential" by a non-party in certain circumstances. *Id.* at *17.

*UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). Rather, the duty to preserve generally extends to "those employees likely to have relevant information – the 'key players in the case." *Id.* at 218. Moreover, the presumption is that a party is not required to produce information from inaccessible data sources, such as backup tapes. *Id.* at 218. Thus, the concerns raised by Mr. Diffley are overblown.

What is more, they are overblown for a reason. Galileo knows perfectly well that the fantasy document search described in Mr. Diffley's affidavit is not what Northwest seeks. Northwest's counsel has offered on multiple occasions to discuss how Galileo could focus its search, such as confining the search to key players or departments. But for tactical reasons – to preserve its ability to argue burden to this Court – Galileo has declined to engage in such discussions. Galileo's description of the burdens associated with a search that exceeds what Northwest wants or the Rules require does not satisfy its burden of explaining how the subpoena is burdensome or onerous.

**D.    If Galileo Incurs Significant Costs In Complying With the Subpoena, Northwest Will Agree to Pay The Share Required By Fed. R. Civ. P. 45.**

Galileo argues that it "must be protected from the significant expenses associated with compliance" and that "[w]hile it is impossible to accurately estimate these costs in advance, the breadth of document requests ensures that the undertaking will be a daunting endeavor[.]" (Galileo Br. at 13). As explained above, Galileo substantially overstates the burdensomeness of the search that it will be required to perform. The search that Galileo will be required to perform in the real world, as opposed to the parade of horribles that Galileo has conjured up, will not be nearly as costly. Northwest recognizes that Rule 45 requires a district court to protect a non-party from significant expense, and to the extent the production of documents in response to the subpoena imposes a significant expense on Galileo, Northwest agrees to bear enough of the

13

expense of those costs reasonably incurred "to render the remainder 'non-significant.'" *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).[7]

## III.    CONCLUSION

For the foregoing reasons, Northwest's Motion to Compel Compliance With Its Subpoena *Duces Tecum* to Galileo should be granted, and Galileo's Motion to Quash should be denied.

Of Counsel:
James P. Denvir
Amy J. Mauser
Jonathan M. Shaw
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Telephone: (202) 237-2727

Parker C. Folse, III
1201 Third Avenue, Suite 3100
SUSMAN GODFREY LLP
Seattle, WA 98101
Telephone: (206) 516-3860

Thomas Tinkham
Theresa M. Bevilacqua
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

DATED:   September 14, 2005

MORRIS, JAMES, HITCHENS
& WILLIAMS LLP

Lewis H. Lazarus (#2374)
Mary B. Matterer (#2696)
Amy A. Quinlan (#3021)
222 Delaware Avenue, 10th Floor
Wilmington, DE  19899
Telephone:  (302) 888-6800
aquinlan@morrisjames.com

**Attorneys for
Northwest Airlines, Inc.**

---

[7]    Northwest requests the Court to take into account the fees that it had to incur in moving to compel, and opposing Galileo's motion to quash, in determining the amount of expenses to which Galileo is entitled from Northwest.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 14th day of September, 2005, I electronically filed the foregoing document, **Northwest Airlines, Inc.'s Reply Memorandum in Support of its Motion to Compel Compliance with its Subpoena *Duces Tecum* to Galileo International, LLC and Opposition to Galileo International, LLC's Motion to Quash**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

James L. Holzihan, Esquire
J. Clayton Athey, Esquire
Prickett, Jones & Elliott, P.A.
1310 King Street
Wilmington, DE  19801

Additionally, I hereby certify that on the 14th day of September, 2005, the foregoing document was served via Federal Express on the following non-registered participants:

Steven P. Handler, Esquire
David F. Wentzel, Esquire
Mark J. Altschul, Esquire
McDermott Will & Emery
227 West Monroe Street
Chicago, IL  60606
312.372.2000

Neil A. Goteiner, Esquire
Farella, Braun & Martel LLP
Russ Building
235 Montgomery Street
San Francisco, CA  94104
415.954.4400

R.H. Wallace, Esquire
Shannon Gracey Ratliff & Miller LLP
777 Main Street, Suite 3800
Fort Worth, TX  76102
817.336.9333

Fred H. Bartlit, Esquire
Bartlit, Beck, Herman, Palenchar & Scott LLP
1899 Wynkoop Street, 8th Floor
Denver, CO  80202
303.592.3100

Chris Lind, Esquire
Bartlit, Beck, Herman, Palenchar & Scott LLP
Courthouse Place, 54 West Hubbard Street
Chicago, IL  60610
312.494.4400

MORRIS, JAMES, HITCHENS
& WILLIAMS LLP

Amy A. Quinlan (#3021)
PNC Bank Center
222 Delaware Avenue, 10th Floor
Wilmington, DE  19899
Telephone:  (302) 888-6800
aquinlan@morrisjames.com
**Attorneys for
Northwest Airlines, Inc.**