## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SABRE, INC., et al., | ) | |
| | ) | |
| v. | ) | Misc. No. 05-MC-00166 (SLR) |
| | ) | |
| NORTHWEST AIRLINES, INC. | ) | Case Pending in the Northern District of Texas, |
| | ) | Fort Worth Division |
| | ) | Civil Action No. 4:04-CV-612-Y |
| | ) | Consolidated with 4:04-CV-907-Y (ECF) |
| | ) | |

## GALILEO INTERNATIONAL INC.'S REPLY
## MEMORANDUM IN SUPPORT OF CROSS MOTION TO QUASH

James L. Holzman (Bar ID # 663)
J. Clayton Athey (Bar ID # 4378)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899-1328
Telephone: (302) 888-6500
Fax: (302) 658-8111

*Attorneys for*
*Galileo International, Inc.*

Of Counsel:

Steven P. Handler
David F. Wentzel
Mark J. Altschul
McDermott, Will & Emery LLP
227 W. Monroe
Chicago, IL 60606
Telephone: (312) 372-2000
Fax: (312) 984-7700

Dated: September 21, 2005

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.................................................................................................1

II.   THE COURT SHOULD GRANT GALILEO'S CROSS MOTION AND DENY
      NORTHWEST'S MOTION BECAUSE OF THE CONFIDENTIAL NATURE OF
      THE DOCUMENTS SOUGHT BY NORTHWEST...........................................1

      A.    Galileo Has Established That the Documents Sought Contain Confidential
            Proprietary Information.                                                    1

      B.    Northwest Has Not Established Relevance.                                    4

      C.    The Risk of Injury to Galileo Outweighs Northwest's Need for the
            Documents.                                                                 5

III.  THE NORTHWEST SUBPOENA IS UNDULY BURDENSOME ......................7

IV.   ESTABLISHED LAW DICTATES THAT GALILEO BE PROTECTED FROM
      SIGNIFICANT EXPENSE TO COMPLY WITH THE SUBPOENA................8

V.    CONCLUSION ...................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**rules**

*Cash Today of Texas, Inc. v. Greenberg,*
  2002 U.S. Dist. LEXIS 20694 (D. Del. Oct. 23, 2002)..............................................1, 2, 4

*Covia P'ship v. River Parish Travel Ctr., Inc.,*
  1991 U.S. Dist. LEXIS 17647 (E.D. La. Dec. 3 1991) ........................................................3

*Greater Rockford Energy and Tech. Corp. v. Shell Oil Co.,*
  138 F.R.D. 530 (C.D. Ill. 1991) .........................................................................................4

*In re Vitamins Antitrust Litigation,*
  267 F. Supp. 2d 738 (S.D. Ohio 2003)................................................................................3

*Lindner v. Dep't of Defense,*
  133 F.3d 17 (D.C. Cir. 1998) .............................................................................................7

*Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.,*
  129 F.R.D. 528 (N.D. Ohio 1990).....................................................................................4, 5

*Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.,*
  2004 U.S. Dist. LEXIS 670 (D. Del. Jan. 13, 2004) .......................................................3, 5

*The Stanley Works v. Newell Co.,*
  1992 U.S. Dist. LEXIS 13817 (N.D. Ill. Aug. 27, 1992) ..................................................3

*United States v. Int'l Bus. Mach. Corp.,*
  81 F.R.D. 628 (S.D.N.Y. 1979)..........................................................................................3

*Williams v. City of Dallas,*
  178 F.R.D. 103 (N.D. Tex. 1998) .......................................................................................7

*Zubulake v. UBS Warburg LLC,*
  220 F.R.D. 212 (S.D.N.Y. 2003) .......................................................................................7

## I.    INTRODUCTION

Galileo's motion to quash demonstrated that producing its confidential information would compromise the company's profitability and financial standing.  No protective order, including the one entered in the underlying litigation in Texas, will sufficiently shield Galileo from exposure to decreased profitability due to the inherent danger of producing documents to a direct competitor. Northwest's reply cites to inapposite cases and omits key facts, as discussed below. [1]  Northwest also fails to distinguish the relevant cases put forward by Galileo wherein the district courts granted the third party competitors' motions to quash.

Northwest also suddenly discounts the burdensome nature of its subpoena.  The burden to Galileo is apparent on its face, however, and is only compounded by the fact that the documents are not relevant at this moment.  The purpose for which the documents are sought, to establish a relevant market for Northwest's antitrust claims, is being challenged by Sabre's motion to dismiss. If the Texas court grants the motion to dismiss, the information subpoenaed by Northwest is irrelevant.  Consequently, the Court should grant Galileo's motion to quash and deny Northwest's motion to compel.

## II.    THE COURT SHOULD GRANT GALILEO'S CROSS MOTION AND DENY NORTHWEST'S MOTION BECAUSE OF THE CONFIDENTIAL NATURE OF THE DOCUMENTS SOUGHT BY NORTHWEST.

### A.    Galileo Has Established That the Documents Sought Contain Confidential Proprietary Information.

Northwest first argues that Galileo has failed to provide "competent evidence" that the documents Northwest seeks are trade secrets (NWA Opp. at 3, 5).  The principal authority relied upon by Northwest for this proposition, *Cash Today of Texas, Inc. v. Greenberg*, is inapposite to the

---

[1] Northwest's Reply Memorandum in Support of its Motion to Compel Compliance with its Subpoena *Duces Tecum* to Galileo International, LLC and Opposition to Galileo International, LLC's Motion to Quash, D.I. 5.  Pinpoint citations are referred to as "NWA Opp."

circumstances here.  In *Cash Today*, the third party vice president's affidavit, which claimed that

defendant sought proprietary and confidential information, was discounted as nothing more than

mere "blanket and generalized assertions."  *Cash Today of Texas, Inc. v. Greenberg*, 2002 U.S.

Dist. LEXIS 20694 *9-*11 (D. Del. Oct. 23, 2002).   The affidavit stated that:

> County Bank also takes measures to safeguard its proprietary information, including
> entering into confidentiality agreements with those loan servicers that wish to enter into
> business with County Bank … More importantly, County Bank takes significant measures to
> safeguard the personal and confidential financial data of its borrowers. . . .

*Id.* at *9.

In contrast, the affidavit of Galileo's Stephen M. Diffley ("Diffley") provides the requisite

"competent evidence" of harm illustrating independent economic value.  *Id.* at *6.  Diffley states

that ". . .Galileo considers to be proprietary and confidential. . . the structure of Galileo's booking

fees, pricing strategies or practices, costs incurred in providing GDS services. . ."  *See Diffley Aff.* ¶

3.[2]  His affidavit continues:

> [b]y keeping its proprietary commercial information confidential, Galileo ensures that no
> customer or competitor will have the unfair advantage of knowing Galileo's margins and
> pricing strategies. . . .   [R]evealing this information would cause Galileo to lose its
> profitability.

*See Diffley Aff.* ¶ 4.  Unlike the bank in *Cash Today*, which did not establish that the documents

sought possessed proprietary information with independent economic value, Galileo has met its

burden of confidential information possessing independent economic value.  *Id.* at *9.

Galileo's legal authorities, unchallenged by Northwest, further illustrate that where a third

party has established independent economic value to trade secret information, the court may deny

production to a direct competitor.  Indeed, divulging confidential information which is the

"lifeblood" of a company—such as the information Northwest seeks—would impact Galileo's "well

---

[2] Attached as Exhibit D to Galileo's Memorandum in Opposition to Northwest Airlines, Inc.'s Motion to Compel and In
Support of Cross Motion to Quash, D.I. 4.  Pinpoint citations are referred to as "Cross Motion."

being." *See, e.g., In re Vitamins Antitrust Litigation*, 267 F. Supp. 2d 738, 742 (S.D. Ohio 2003)

(granting third party's motion to quash a subpoena in part because the financial well being of third

party would be harmed if it disclosed its trade secrets to direct competitors); *The Stanley Works v.

Newell Co.*, 1992 U.S. Dist. LEXIS 13817, at *15 (N.D. Ill. Aug. 27, 1992) (court declined to

compel production of confidential sales records, reasoning that dissemination of such information

"could be devastating" to movant's business).

      Northwest also argues that the protective order entered in Texas "fully" protects Galileo's

"confidentiality interests." (NWA Opp. at 3, 5). Northwest cites no legal authority which addresses

the inherent danger in divulging a third party's confidential information to a direct competitor under

the guise of a protective order. Instead, Northwest cites cases which are not relevant to the facts

here. For example, the court in *Medtronic Ave., Inc.* considered plaintiff's motion for protective

order rather than a motion to compel a third party or a non-party's motion to quash. *Medtronic

Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 2004 U.S. Dist. LEXIS 670, *2 (D. Del. Jan. 13,

2004). Similarly, *Covia Partnership* and *IBM Corp.* addressed a motion to compel between a

plaintiff and defendant. *See Covia P'ship v. River Parish Travel Ctr., Inc.*, 1991 U.S. Dist. LEXIS

17647 (E.D. La. Dec. 3 1991) (court denied motion to review magistrate's order granting plaintiff's

motion to compel production of defendant documents and defendant's motion for entry of

protective order); *United States v. Int'l Bus. Mach. Corp.*, 81 F.R.D. 628 (S.D.N.Y. 1979) (court

enforced plaintiff's subpoena for production of documents served on defendant's pending trial

witness). These cases do not address a situation where a third party, having no direct connection to

the underlying litigation, was served with a document subpoena.

      Galileo's motion to quash, however, has demonstrated that the protective order entered in

Texas would insufficiently protect the confidential nature of Galileo's documents. The protective

order's "Restricted Access" designation would still permit Galileo documents to be reviewed by

- 3 -

independent experts.  This kind of expert review is inherently dangerous and requires no additional

evidence of potential harm to Galileo.  *See, e.g., Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*,

129 F.R.D. 528, 531 (N.D. Ohio 1990); *Greater Rockford Energy and Tech. Corp. v. Shell Oil Co.*,

138 F.R.D. 530, 537-38 (C.D. Ill. 1991) (stating that defendant and non party "compete for many of

the same customers," court held that disclosure to experts was inherently dangerous and denied

defendants motion to compel in part based on this reason).

**B.    Northwest Has Not Established Relevance.**

Under Delaware law, once Galileo demonstrates that the information sought is confidential

trade secret information and that disclosure would be harmful, Northwest must establish that its

document requests are relevant and necessary to the underlying litigation.  Northwest argues that it

has detailed how "each of its [document] requests seeks relevant information."  (NWA Opp. at 8).

It again relies primarily on *Cash Today* for the proposition that "discovery is virtually always

ordered once the movant has established that the secret information is relevant and necessary."

*Cash Today of Texas, Inc.,* 2002 U.S. Dist. LEXIS 20694 at *7, *11; (NWA Opp. at 7-8).

However, the *Cash Today* defendant was also able to establish the relevance of its document

requests more persuasively than Northwest accomplished in its opposition brief.

Defendant in *Cash Today* alleged that plaintiff kept funds "that were rightfully the property

of the defendants; that [plaintiff] deposited these funds to [the third party's bank] accounts; and that

[the third party bank] may act as an alter ego of [plaintiff]."  *Id.* at *5 (emphasis added).  By

contrast, Northwest never alleges that Galileo's conduct specifically impacted its underlying

litigation with Sabre.  Instead, Northwest contends that the information sought from Galileo will

vindicate Northwest's antitrust claims against Sabre by establishing the relevant market.  (NWA

Opp. at 10-11).  Northwest also argues that Galileo "substantially overstates the strength of Sabre's

motion to dismiss" to refute Galileo's assertion that the document requests are premature due to the pendency of the Sabre motion to dismiss. (NWA Opp. at 9).

Not surprisingly, Northwest makes conclusory, self-serving statements regarding the merits of its opposition. However, only the Texas court can ultimately conclude whether Sabre's arguments are more valid than those forwarded by Northwest in opposition. In the meantime, the relevance of Northwest's antitrust claims are not at issue because Northwest has no need for the discovery it seeks unless and until Sabre's motion to dismiss is denied.

C.    **The Risk of Injury to Galileo Outweighs Northwest's Need for the Documents.**

Even if the documents sought are relevant to Northwest, Delaware law requires the Court to balance Northwest's need for the information against the harm to Galileo if the confidential information were exposed. Galileo and Northwest are in agreement on this legal standard. The affidavit of Diffley demonstrates that Galileo's commercial viability would be put at risk if it were forced to turn over the documents containing financially sensitive information. This harm is immediate and real, and the protective order entered in Texas does not remove the "constant danger" that is inherent with any protective order. *Litton Indus., Inc.,* 129 F.R.D. at 531. This is especially true where a party seeks confidential information from a third party. *Id.; see also Medtronic Ave., Inc.* 2004 U.S. Dist. LEXIS 670, at *7 (disclosure to a direct competitor "is presumed more harmful than disclosure to non-competitor"). If the protective order is violated, the harm to Galileo cannot be undone, regardless of the best intentions of any party.

By contrast, Northwest advances speculative arguments as to why the documents sought in its subpoena are relevant. None of these documents are currently relevant because Northwest's antitrust claims could be dismissed at any moment. Further, even if the Texas court denied Sabre's motion to dismiss, Northwest's document requests go beyond what is truly relevant to its antitrust claims. Northwest also blatantly misstates Galileo's position on this subject. Northwest

inaccurately remarks that Galileo "concedes" the relevancy of the Northwest document requests. (NWA Opp. at 8). In fact, Galileo stated just the opposite in its Memorandum in Support of its Cross Motion to Quash:

> only a small portion of the requested documents would be conceivably relevant to Northwest's antitrust claims. The rest of the documents that Northwest seeks—perhaps the majority—go far beyond the limited number of legitimate antitrust issues likely to remain after the Texas court's ruling if any.

(Cross Motion at 13).

For example, a brief review of a few of the document requests in the Northwest subpoena highlights their irrelevance. Northwest fails to explain how Galileo's booking fee strategies and costs incurred in providing GDS services relate to its antitrust claims. Nor does Northwest describe the relevance of documents related to the negotiation of participation agreements.

Northwest additionally mischaracterizes the previous six month's "full-blown" discovery occurring in the underlying litigation. (NWA Opp. at 3). It is undisputed that none of the remaining GDS entities have produced documents pursuant to Northwest's subpoenas, and Northwest has identified only one airline which has produced documents. Clearly, Galileo is not impairing Northwest's discovery efforts more so than any other GDS. Rather, Galileo is preserving its rights as a third party competitor just the same as every other GDS on whom it served the subpoena at issue.

Further, Northwest surprisingly omits any discussion about the possibility of receiving an extension to the discovery deadline. There is no evidence that the December 30, 2005 discovery deadline is an inflexible date that cannot be revised. Common sense would dictate that the Texas court would be amenable to a discovery extension given the scope of document requests served on numerous third parties. For these reasons, the court should grant Galileo's cross motion to quash and deny Northwest's motion to compel.

## III.    THE NORTHWEST SUBPOENA IS UNDULY BURDENSOME

The third argument advanced by Northwest is that Galileo's interpretation of its duties to produce documents "is more extensive than what is generally performed by parties in a litigation." (NWA Opp.. at 12).  This attempt to refute Galileo's undue burden argument is remarkable in the way Northwest downplays the oppressive nature of its subpoena.  The sole authority advanced by Northwest discusses a general legal proposition that "a litigant is under no duty to keep or retain every document in its possession."  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).

Northwest fails to challenge the authorities set forth by Galileo.  Other than stating that Galileo has described a search that is "more extensive than what is generally performed by parties in a litigation" and that Diffley's description of Galileo's burden to retrieve documents "exceeds" what Northwest seeks, Northwest omits discussion of the additional factors this Court should address.  *See, e.g., Lindner v. Dep't of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) (court should consider the party's need for the documents and the nature and importance of the litigation); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (court should consider the expense and inconvenience to the third party of compliance with the subpoena).

The factors described by the *Lindner* and *Williams* courts were discussed above in the course of balancing Northwest's current need for Galileo's documents.  Rather than the "fantasy document search" described by Northwest, Diffley's affidavit states the onerous nature of the document requests.  (NWA Opp. at 13).  The search for documents could require "dozens, if not hundreds of employees around the world" to search for responsive documents.  Diffley Aff. ¶ 6.  Determining responsive documents would also divert Galileo employees "from their duties to participate in the search for responsive documents. . . ."  Diffley Aff. ¶ 6.  Balancing these burdens on Galileo against compelling the production of documents which may never be relevant to the

underlying litigation weighs in favor of Galileo. Consequently, the Court should wait for a ruling on the motion to dismiss so that Northwest's need for Galileo's documents—if any—can be more clearly defined.

## IV.   ESTABLISHED LAW DICTATES THAT GALILEO BE PROTECTED FROM SIGNIFICANT EXPENSE TO COMPLY WITH THE SUBPOENA.

Finally, Northwest argues that while Fed. R. Civ. P. 45 "requires a district court to protect a non-party from significant expense. Northwest agrees to bear enough of those costs reasonably incurred to 'render the remainder non-significant.'" (NWA Opp. at 13-14) (internal citation omitted). Galileo continues to maintain that if it is compelled to produced documents, the task will be a significant burden on its employees and resources.

## V.   CONCLUSION

For the foregoing reasons, Galileo's Motion to Quash Document Subpoena should be granted and Northwest's Motion to Compel should be denied.

Dated:  September 21, 2005

Respectfully submitted,

PRICKETT, JONES & ELLIOTT, P.A..

By: _____
James L. Holzman (Bar ID #663)
J. Clayton Athey (Bar ID #4378)
Prickett, Jones & Elliott, P.A.
1310 King Street
Wilmington, DE 19899
Telephone:  (302) 888-6500
Fax:  (302) 658-8111
jlholzman@prickett.com
jcathey@prickett.com

Of Counsel:

Steven P. Handler
David F. Wentzel
Mark J. Altschul
McDermott, Will & Emery LLP
227 W. Monroe
Chicago, IL 60606
Telephone:  (312) 372-2000
Fax: (312) 984-7700
CHI99 4528395-2.069834.0012

*Attorneys for*
*Galileo International, Inc.*

## CERTIFICATE OF SERVICE

I, J. Clayton Athey, hereby certify that on September 21, 2005, I electronically filed **Galileo International Inc.'s Reply Memorandum in Support of Cross Motion to Quash** with the Clerk of the Court using CM/ECF, which is available for viewing and downloading, and which will send notification of such filing to the following counsel of record:

> Lewis H. Lazarus, Esquire -#2374
> Mary B. Matterer, Esquire - #2696
> Morris, James, Hitchens & Williams LLP
> 222 Delaware Avenue, 10th Floor
> Wilmington, DE 19899
> llazarus@morrisjames.com
> mmatterer@morrisjames.com

I further certify that on September 21, 2005, I have mailed by Federal Express **Galileo International Inc.'s Reply Memorandum in Support of Cross Motion to Quash** to the following non-registered participants:

James P. Denvir, Esquire
Amy J. Mauser, Esquire
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Telephone 202-237-2727

Roderick M. Thompson, Esquire
Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
Telephone 415-954-4400

PRICKETT, JONES & ELLIOTT, P.A.

By: _____
James L. Holzman (Bar ID #663)
J. Clayton Athey (Bar ID #4378)
1310 King Street
P.O. Box 1328
Wilmington, Delaware 19899-1328
Telephone: (302) 888-6500
Fax: (302) 658-8111
jlholzman@prickett.com
jcathey@prickett.com
**Attorneys for
Galileo International, Inc.**